**HOCHSCHILD v. COMMISSIONER OF INTERNAL REVENUE.**

No. 186, Docket 20445.

Circuit Court of Appeals, Second Circuit.

May 16, 1947.

FRANK, Circuit Judge, dissenting in part.

Before SWAN, CHASE and FRANK, Circuit Judges.

Norris Darrell, of New York City (Sullivan & Cromwell, John F. Dooling, Jr., and Bruce A. Hecker, all of New York City, of counsel), for petitioner.

Sewall Key, Acting Asst. Atty. Gen. (Lee A. Jackson and S. Dee Hanson, Sp. Assts. to the Atty. Gen., of counsel), for respondent.

CHASE, Circuit Judge.

In his income tax return for the calendar year 1939 the petitioner deducted $4,125 which he had paid in that year as attorney's fees incurred in the successful defense of a stockholder's derivative suit brought against him and others in the state court in New York. The Commissioner disallowed the deduction in full. The Tax Court disallowed the deduction in part and this petition was brought to review that decision.

The pertinent facts were not disputed and were found in accordance with a stipulation filed by the parties. They are that the petitioner has been a director and substantial stockholder of The American Metal Company, Ltd., a New York corporation, from November 22, 1916 to at least the date of the beginning of the proceedings in the Tax Court and, since May 24, 1917 has also been one of its principal officers. In accordance with a long standing practice of The American Metal Company its directors, officers, stockholders and employees were permitted to participate in new ventures which it undertook. A syndicate, formed in November 1916

consisting of The American Metal Company and a number of its directors, officers, employees and stockholders, acquired an option upon certain molybdenum properties at Climax, Col. The option was exercised and a Delaware corporation called Climax Molybdenum Company was organized in January 1917 to which the syndicate's property was transferred in consideration for its capital stock and the petitioner then became a stockholder of Climax in proportion to his interest in the syndicate. He has remained a stockholder and has been a director and part of the time an officer of Climax at least up to the commencement of the proceedings below.

The Climax venture at length proved to be a financial success and in December 1938 a stockholder's derivative suit was brought in the New York Supreme Court, New York County, against the petitioner and others for the benefit of The American Metal Company in which the petitioner and others were charged with breaches of their fiduciary duties to the Metal Company in respect to the Climax venture. It was consolidated for trial with a similar suit thereafter commenced in the same court. The petitioner was partly successful in defending that suit in the trial court, Sup., 36 N.Y.S.2d 856, and upon appeal a judgment of the Appellate Division of the Supreme Court, 268 App.Div. 239, 50 N.Y.S.2d 800, which became final, completely vindicated him.

The plaintiffs in the above mentioned suit sought, inter alia, (1) to impress a trust upon the Climax stock held by the petitioner; (2) an accounting for damages and profits; and (3) an accounting for the value of any shares of Climax which the petitioner had held but was unable to transfer to The American Metal Company by reason of his sale or other disposition of them.

The petitioner had acquired 1,500 shares of Climax stock in 1918, 1,500 additional shares in 1920-21 and had surrendered 321 of them in 1926 in the settlement of litigation between Climax and the Metal Company. The Climax stock was split 10 for one in 1929 and three for one in 1935. During the period 1933 to 1939 inclusive the petitioner received dividends on his Climax stock amounting in the aggregate to $1,281,331.95.

The attorneys fees which the petitioner paid in making his successful defense of the suit in the state court were claimed to be deductible under Sec. 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A.Int. Rev. Code, § 23(a) (1) (A), as ordinary and necessary expenses paid during the taxable year in carrying on a trade or business and, in the alternative, under Sec. 23(a) (2) of the Code as necessary expenses paid during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

The Tax Court allocated $3,581.84 of the fees paid to the expense of defending the equitable title to the petitioner's Climax stock and held that part of it was not deductible because it was the cost of defending the title to property and thus a capital expenditure within T.R. 111; Sec. 29.24-2. The remainder was allowed as a deduction on the ground that it was paid to retain income after it was collected and was to be treated for purposes of deduction as though paid for the collection of the income. In this the Commissioner acquiesced.

■ As there is no dispute as to any of the facts or as to the allocation already made by the Tax Court, the sole issue is one of law reviewable in this court. Helvering v. Stormfeltz, 8 Cir., 142 F.2d 982. See Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670.

■ The petitioner when acting as a director and officer of The American Metal Company was engaged in carrying on a trade or business within the meaning of the above statute. Commissioner v. People's-Pittsburgh Trust Co., 3 Cir., 60 F.2d 187; Foss v. Commissioner, 2 Cir., 75 F.2d 326. The fees paid were ordinary and necessary expenses which were directly connected with such business, being paid to defend a lawsuit in which he was charged with breaches of the fiduciary duties he owed the corporation he served as a director and officer. Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78

L.Ed. 212; Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505. He owed the corporation no duty as a fiduciary merely because he was a stockholder; his liability so alleged being solely that of a malfeasant director and officer and on that decision turned. The significance of his status as a stockholder is limited to the fact that, had the breaches of fiduciary duties been established, the state court would have had the opportunity as well as the power to deprive him of the Climax stock he still held and not have had to confine its relief to money damages.

Regardless of what effect an adverse decision might have had upon the title to his Climax stock, it was necessary for him to defend the lawsuit to protect himself from being compelled to account generally for the alleged breaches of the duties to The American Metal Company. And all the ordinary and necessary expenses which he paid in the taxable year for such defense were deductible under Sec. 23(a) (1) (A) of the Code as it has been construed in the authorities above cited.

We cannot agree that these fees which the petitioner paid in defense of the lawsuit were any the less deductible because his liability, if proved, might have destroyed his equitable title to the stock he held. His right to keep it was certainly in issue and in that sense his title to it was defended, to be sure, but the title as such was not perfected in any way by his expenditures for legal assistance. He thereby but fended off an abortive attack upon the conduct of his business as a fiduciary and by freeing himself from liability to his corporation to account for such conduct put all of his property beyond the reach of his then accusers. A similar result in this respect was attained by the expenditures allowed as a deduction in the Kornhauser case, supra. See Rassenfoss v. Commissioner, 7 Cir., 158 F.2d 764, which sufficiently distinguishes the authorities on which the respondent relies. In further support of our conclusion that these fees are not in any real sense capital expenditures see Commissioner v. Field, 2 Cir., 42 F.2d 820 and Levitt & Sons v. Nunan, 2 Cir., 142 F.2d 795.

Decision reversed.

FRANK, Circuit Judge, dissents in part with opinion.

FRANK, Circuit Judge (dissenting in part).

To explain my reasons for partially dissenting, I must supplement my colleagues' statement of facts. The complaint in the State court suit, Turner v. American Metal Company, 268 App.Div. 239, 50 N.Y.S.2d 800 (expressly made part of the stipulation on which the instant case was tried in the Tax Court), charged that, as a result of a conspiracy in which taxpayer and other officers and directors of American Metal had joined, the following had occurred: (a) Taxpayer had himself wrongfully acquired title to certain shares of the Climax Company, and the equitable title to those shares was therefore in American Metal. (b) Taxpayer had aided others in wrongfully acquiring title to certain other Climax shares; some of those others were direct parties to the conspiracy, while still others acquired such shares with full knowledge of the conspiracy; the equitable title to all these shares was asserted to be in American Metal. (c) Taxpayer had aided in causing American Metal wrongfully to spend money for the benefit of Climax, to the damage of American Metal. On this basis, the Turner complaint prayed as follows: (a) That taxpayer be ordered to transfer to American Metal the legal title to the Climax shares which he had wrongfully obtained; (b) that he account for any dividends on those Climax shares;[1] (c) that he and the other conspirators be held liable, jointly and severally, for all damages to American Metal resulting from the conspiracy. I think that these facts call for a nicer analysis than that contained in my colleagues' opinion, for the following reasons:

1. In part, the Turner suit sought to hold taxpayer liable merely for damages

[1] As to expenses incurred in defending as to this item, the Tax Court decided in favor of taxpayer, and the Commissioner has not appealed.

said to have resulted from his conduct as an official of American Metal. Here I refer to (a) the alleged damages resulting from the moneys said to have been wrongfully paid by American Metal for the benefit of Climax, and (b) the alleged damages to American Metal resulting from the fact that the taxpayer and his alleged co-conspirators aided others than himself in allegedly wrongful acquisition of Climax stock.[2] To that extent, I agree that, in the Turner suit, he was not defending the title to the Climax stock he held or to any other of his property. To rule otherwise would be to say that defense of any suit is a defense against an attack on title to property, since an adverse judgment (through levy of execution or otherwise) may diminish a defendant's property, including, for instance, stock in which he may have invested. Consequently, taxpayer's expense in defending that phase of the Turner suit was, I think, incurred as a result of "carrying on a trade or business." Up to that point, in line with the authorities cited by them, I agree with my colleagues.

2. I think, however, that the same is not true of his defense of that part of the Turner suit which charged him with having himself wrongfully obtained Climax shares and which sought an order directing him to transfer those shares to American Metal as its equitable owner. To that extent, the Turner action was a direct attack on his title to the Climax shares.

True, that attack was grounded on the alleged impropriety of his conduct as an American Metal official, coupled with alleged similar improper conduct by other such officials conspiring with him; for the theory of the Turner suit was that only by such conduct had it been possible for him to acquire the Climax shares. But, in that respect, the action was the same as if, not being himself an American Metal officer, taxpayer had obtained Climax stock through action of American Metal officers known to him to be violative of their corporate obligations; in those circumstances, his expense of defending a suit seeking to compel him to transfer the title to such stock to American Metal, as its equitable owner, would not have been incurred in "carrying on a trade or business." So it seems to me that this follows: That, in order to succeed in having taxpayer ordered to transfer his Climax stock to American Metal, Turner had to prove that taxpayer's acquisition of that stock, for his own benefit, had been made possible by taxpayer's misconduct as an American Metal official, does not alter the fact that the Turner suit, as to those shares, was a direct attack on taxpayer's title to that stock. In other words, I think it immaterial that the alleged defect in that title stemmed from taxpayer's own alleged deviation from his corporate duties. Wherefore, in defending this phase of the action, taxpayer, I think, was engaged directly in protecting his title to property. See, e.g., Bowers v. Lumpkin, 4 Cir., 140 F.2d 927 151 A.L.R. 1336; Jones Estate v. Commissioner, 5 Cir., 127 F.2d 231; Levitt & Sons v. Nunan, 2 Cir., 142 F.2d 795; Levitt & Sons v. Commissioner, 2 Cir., 160 F.2d 209; Murphy Oil Co. v. Burnet, 9 Cir., 55 F.2d 17; Moynier v. Welch, 9 Cir., 97 F.2d 471. As here the "matter of title was directly involved and not merely incidental," Rassenfoss v. Commissioner, 7 Cir., 158 F.2d 764, 768 is distinguishable. For like reasons, I think that none of the other cases cited by my colleagues in support of their conclusion is apposite on this point.

However, taxpayer was, even as to that phase of the Turner suit, also in part defending the way he had functioned as a corporate officer. That part of the expense was, I believe, deductible.

3. Taxpayer made no proof of the appropriate allocation of the expenses as between the items discussed above. Since he had the burden, perhaps, if the foregoing is correct, he should fail. But I think that, in accordance with the doctrine of Cohan v. Commissioner, 2 Cir., 39 F.2d 540, 543-545, we should remand for determination of the allocation by the Tax Court.

---

[2] There would be no such damages if those others still had the shares and were thus able to transfer them to American Metal.