### UNITED STATES of America, Appellant,

v.

### T. W. and Evelyn B. WHEELER, Appellees.

### No. 19178.

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1962.

Rehearing Denied Feb. 27, 1963.

---

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Washington, D. C., Ernest Morgan, U. S. Atty., K. Key Hoffman, Asst. U. S. Atty., San Antonio, Tex., David O. Walter, Harry Baum, Douglas A. Kahn, Attys., Dept. of Justice, Washington, D. C., for appellant.

Francis W. Baker, Paul E. Casseb, San Antonio, Tex., for appellees.

Before RIVES, CAMERON and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

This appeal involves the question whether $56,641.41 paid [1] by appellee taxpayer [2] in compromise and settlement of a state court action charging him with breach of a contract [3] to sell the controlling stock interest in three corporations constituted nondeductible capital expenditures to be added to the cost basis of the stock or currently deductible expenses.

The district court, sitting without a jury, found: "That the reason T. W. Wheeler made the payment of $54,-675.95 to A. G. Ainsworth at the time of the settlement of said law suit, was to prevent the appointment of a receiver over the corporations." The court thus concluded that the payments were an ordinary and necessary expense paid for the management, conservation or maintenance of property held for the production of income;[4] rather than a non-deductible capital expenditure as defined by the statutes[5] and as more particularly distinguished in the Treasury Regulation[6] upon which appellant relies.

Appellant contends that the subjective motive of the taxpayer in making the settlement was immaterial, but that the nature of the suit settled is the crucial test. In the alternative, appellant contends that the findings of fact are clearly erroneous. Appellee takes the position that, inasmuch as the district court found as a matter of fact that the settlement was made to prevent a receivership, the only question for review here is whether the district court's findings of fact are clearly erroneous.

In 1953 appellee owned the controlling stock interests in three corporations and was negotiating a sale of the stock to one Cage. The sale was not consummated because one Phinney, Cage's attorney, informed appellee that Cage was no longer interested in buying the stock. However, Phinney told appellee that one Ainsworth was interested in buying the stock.

A contract for the sale of the stock to Ainsworth was executed in May 1953.

---

1. Including $1,965.46 paid as attorneys' fees in defending the suit and effectuating the compromise.

2. Evelyn B. Wheeler is a party to this action only because she and her husband filed a joint income tax return. Therefore, in this opinion "appellee" refers only to T. W. Wheeler.

3. The complaint prayed for appointment of a receiver, temporary restraining orders and injunction, general relief as for damages and specific performance.

4. Deductible from net income under 26 U.S.C.A. § 212(2) 1954 Code: "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year— * * * * *

"(2) for the management, conservation, or maintenance of property held for the production of income." [§ 23(a) (2) I.R.C.1939.]

5. 26 U.S.C.A. § 263(a) (1): "(a) *General rule.* No deduction shall be allowed for— "(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *" (§ 24(a) (2) I.R.C.1939.)

6. Treasury Regulation 1.212(1) (k): "Expenses paid or incurred in defending or perfecting title to property, in recovering property * * *, or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. * * *"

The purchase price was to be one million dollars and was to include two hundred thousand dollars down payment with the balance to be paid in installments. The two hundred thousand dollars was to be obtained by the purchaser from a bank and a deed of trust on the corporation's property was to be given the bank as security. Ainsworth was to pledge the stock (subject to the deed of trust) to appellee as security for the eight hundred thousand dollar balance. Attorney Phinney, according to appellee, served as attorney for both parties in the transaction.

The final paragraph of the note which was to evidence Ainsworth's obligation to appellee is as follows:

"No recourse shall be had for the payment of the principal or interest on this note against A. G. Ainsworth, his heirs, executors or administrators, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment, or penalty or otherwise, all such liability being, by the acceptance hereof, expressly waived and released, it being understood that the holder of this note shall look solely to the security [the stock pledged] for said note for payment."

Appellee testified that, before the contract was signed, he asked the attorney if the above quoted clause would not relieve the purchaser of any personal obligation to pay the note. He said that Phinney, acting as attorney for both parties, said it would not, assuring appellee that the purchaser would be personally responsible for the eight hundred thousand dollar balance. Appellee then signed the contract.

However, upon showing the contract to friends and another attorney, appellee was advised that he had been duped. He discovered that Cage, the man originally interested in buying the stock, was still interested and had not told Attorney Phinney that he was not interested, but was ready and willing to pay one million dollars for the stock. Appellee believed that if he performed the contract, Ainsworth would probably "bleed" the corporate assets by paying personal salaries, expenses and perhaps dividends, then turn the stock back with the corporation's assets depleted by these withdrawals, all without any personal liability to the purchaser, Ainsworth.

Appellee refused to consummate the sale, and Ainsworth brought suit in a Texas state court, setting out the terms of the contract, complaining that appellee had breached the contract and praying that appellee be enjoined from selling the stock, that a receiver be appointed, and asking for specific performance, damages and general relief.

The district court found as facts that credit was at all times indispensable to appellee in the operation of the corporations, that appellee believed that the appointment of a receiver would cut off all credit to the corporations, and that the payment of the money in settlement was made to prevent the appointment of a receiver. The court concluded that the sums paid out were ordinary and necessary expenses paid for the management, conservation and maintenance of property (the stock) held for the production of income, and thus deductible expenses rather than capital expenditures.

Appellee taxpayer urges that the district court's finding of fact that the reason he made the settlement was to prevent the appointment of a receiver over the corporation is not clearly erroneous, and that the taxpayer's subjective motive for settling the suit is material in distinguishing between deductible expenses and capital outlay, and relies principally upon Levitt & Sons, Inc. v. Nunan, 2 Cir., 1944, 142 F.2d 795. The appellant insists that the subjective motive of the taxpayer is irrelevant, that the nature of the suit itself, and of the compromise agreement is dispositive.[7]

7. Citing Lewis v. Commissioner, 2 Cir., 1958, 253 F.2d 821, 824, 825, 826, n. 5; United States v. General Geophysical Co., 5 Cir., 1961, 296 F.2d 86, 90; Brown v. Commissioner, 5 Cir., 1954, 215 F.2d 697, 700; Arcadia Refining Co. v. Commissioner, 5 Cir., 1941, 118 F.2d 1010.

It seems to us that the finding by the district court and the argument of counsel place undue emphasis upon the reason or subjective motive of the taxpayer, and that the real question is what was the substance as distinguished from the legal form of the transaction. As said in Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, 594, 63 S.Ct. 1279, 1282, 87 L.Ed. 1607: "The origin and nature, and not the legal form, of the expense sought to be deducted determines the applicability of the words of § 23 (a)."

Conceding that the taxpayer's reason or motive may be considered in determining the real substance of the transaction, it certainly cannot be so considered to the exclusion of the objective facts. Those facts leave us in no doubt that the suit which was settled was a suit for specific performance and directly involved title to the stock in question. It was based on a written contract signed by the taxpayer. The district court made no finding that Ainsworth's claim for specific performance had no foundation. No attorney so testified. The only evidence tending to that conclusion was the taxpayer's testimony that, "the attorney told me that I could win that specific performance thing hands down." To conclude from a client's understanding of his attorney's optimistic prediction of victory that the attack on title lacked substance would indeed be far-fetched.

The first intimation of such an impression is in the taxpayer's testimony upon the trial of this tax refund suit. Actually the taxpayer was already committed to the fact that he settled the case to prevent the possibility of losing the case and being required to specifically perform his contract. Attached to his formal claim for refund was a statement of "Grounds for Claim," which included the following:

"Taxpayer made such settlement to prevent:

"(1) the possibility of losing the case which would force him to complete the contract and cause a tremendous reduction in the value of his property held for the production of income. Taxpayer before the contract was entered into had property held for the production of income (capital stock) amounting in value to $1,000,000.00. Should taxpayer have been forced to fulfill the contract of sale his property held for the production of income would have been converted into property (promissory notes) which he feared would have a value much less than their face value due to the anticipated action of the purchaser. Taxpayer wanted to protect his property held for the production of income (capital stock) and to conserve it.

"(2) the possibility of placing the corporation in receivership which would damage the corporations heavily, financially and their goodwill, and cause taxpayer's property held for the production of income (capital stock) to decrease in value accordingly.

"Section 212 of the Internal Revenue Code allows as expenses all ordinary and necessary expenses paid for the management, conservation or maintenance of property held for the production of income. Taxpayer's sole reason for payment of such settlement was to protect and conserve such capital stock, his property held for the production of income."

Likewise, taxpayer's complaint instituting the present action alleged:

"IX

"Taxpayers made such settlement to prevent the possibility of losing the case which would force them to complete the contract and cause a tremendous reduction in the value of their property held for the production of income, and to prevent the possibility of placing the corporation in receivership which would damage the corporations heavily, financially, and their good will, and cause taxpayers' property held for produc-

tion of income to decrease in value accordingly."

■ In the face of these record commitments, it cannot now be successfully urged that taxpayer's reason for making the settlement was substantially or solely to prevent the appointment of a receiver. That does not accord with the objective facts or with the taxpayer's own statements. We conclude that the payments in question were made by the taxpayer in defense or protection of his title to the stock that was the subject of the suit for specific performance, and were therefore capital expenditures.

The judgment is therefore reversed and the cause remanded.

Reversed and remanded.

CAMERON, Circuit Judge (dissenting).

I.

It seems to me, with deference, that the basic holding of the majority opinion is that the findings of fact of the court below must be set aside as clearly erroneous. The opinion in effect concedes that appellee, T. W. Wheeler, gave testimony in direct support of the finding of the court below "that credit was at all times indispensable to appellee in the operation of the corporations, that appellee believed that the appointment of a receiver would cut off all credit to the corporations, and that the payment of the money in settlement was made to prevent the appointment of a receiver." [1]

The majority does not, as I understand it, intimate that there was any testimony given by any witness refuting that given by appellee. Nor does it advert to the finding of the trial court that the settlement was made "immediately prior to the hearing on A. G. Ainsworth's application for a temporary injunction and

the appointment of a temporary receiver * * *." It rests its conclusion rather upon the postulate that the testimony was inconsistent with two writings, appellees' claim for refund and their complaint filed in this action. These documents do not, in my opinion, constitute a sufficient refutation of the undisputed testimony, supported by the circumstances attending the settlement, to warrant setting aside the findings of the trial court as clearly erroneous.

The claim for refund embraced every theory which the taxpayer desired to present as the basis for allowance of the claim, and was, in reality, largely a legal argument. Paragraph (2) of the claim, as quoted in the majority opinion, shows that the prospect of the placing of the corporations in receivership was an important consideration in the making of the settlement and was one of the bases asserted for appellees' claim for refund. The inclusion of the other grounds does not, in my opinion, weaken the fact that the appellees were explicitly relying on the threat of receivership, which the court below found to be the basic reason behind the settlement.

The same thing is true of the complaint appellees filed. It is true that, as quoted in the majority opinion, the complaint asserted that the taxpayers made the settlement to "prevent the possibility of losing the case which would force them to complete the contract and cause a tremendous reduction in the value of their property held for the production of income * * *." But the complaint also asserted the claim which the court below found to be the one which influenced appellees to buy their peace:

"Immediately prior to the hearing on the purchaser's application for

[1] When asked "Specifically why did you pay the money?" appellee T. W. Wheeler responded:
   "A. Well, the attorney told me that I could win that specific performance thing hands down. But when they go to placing by business in the hands of the receiver, I am bankrupt—my creditors—I am cut off, because at that time I needed all the bank credit I could get. I was borrowing money every day. Every day we were borrowing money on our accounts receivable to keep going the next day. It meant—you put that receiver up there—I am cut off at both ends. I am out of business."

the appointment of a receiver, taxpayers settled the case * * *.

"* * * to prevent the possibility of placing the corporation in receivership * * *."

It is provided in Rule 8(e) (2), F.R. Civ.P., that a "party may set forth two or more statements of a claim * * * alternately or hypothetically, either in one count * * * or in separate counts * * *." It is further there provided that a "party may also state as many separate claims or defenses as he has regardless of consistency * * *." And this Court has held consistently that cases should be decided on the evidence rather than the pleadings.[2]

The court below heard the evidence and the statements of counsel for the respective parties made to the court during the production of the evidence;[3] and I do not believe that the two writings upon which the majority relies are sufficient to overturn its findings on this issue of fact.

## II.

As I understood the argument made before us, the appellees thought that the case most directly in point was Levitt & Sons, Inc. v. Nunan, 2 Cir., 1944, 142 F. 2d 795, and the appellant seemed to concede that this case did support the position of appellees. In its brief, appellant stated "that the language of the Levitt opinion is sufficiently broad for application here." In that case, one Edelman made demand upon the taxpayer for an accounting of certain unspecified real property, and proceeds from the sale of real property, then in the taxpayer's possession. The taxpayer settled the claim for sixty-five thousand dollars and the question on appeal was the same as that before us here; i. e., was the money paid

out a deductible expense or a nondeductible capital expenditure incurred in the defense of title to be added to basis.

Judge Learned Hand gave the opinion of the court, which reads in part:

"The Levitts retained an attorney who examined the facts and reported that the claim was *utterly baseless and made in bad faith;* in substance, merely blackmail. However, an accountant whom they had long employed and whose judgment they trusted thought that the company *could not afford to be subjected to the dangers of such a suit, regardless of its lack of merit.* Its affairs were in solution, and precipitation might ruin them; it had on hand many unfinished transactions, sales, building contracts, and the like, and a *shock to its credit might prove far more disastrous than a large sum paid in settlement,* however unnecessary that was actually *to protect its title.* This argument prevailed, and Edelman was paid [$]65,000 for a release by himself and those whom he represented. The Tax Court concluded that the claim had been 'to *recover from petitioner property to which it had no title.* And, if the agreement to pay * * * was *to settle a claim of that nature,* the payment must be regarded as a payment to get rid of a claim against some of the assets of petitioner.' Again, that the claim was 'against petitioner as the recipient of property and proceeds * * * which Edelman believed should have gone to stockholders of Rockville.' It also held (as an alternative we must suppose), that 'to incur an expense to avoid such uncertain contingencies as petitioner's officers believed would re-

---

2. See, e. g., Des Isles v. Evans et al., 5 Cir., 1952, 200 F.2d 614, 616:
"Under the Rules of Civil Procedure a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings."

3. Including the statement of appellees' attorney: "* * * our position is that Mr. Wheeler didn't pay the money to get out from under this specific performance, but he paid it to prevent the receivership, which he has just testified to."

sult if Edelman filed an action * * involving such groundless claims was neither an ordinary or' (sic) 'a necessary step for petitioner to take in the conduct of its business.' * *

"The judge did indeed find that Edelman claimed an equitable interest in the taxpayer's property; and we agree, as we have said. * * *" [Emphasis supplied.]

With respect to the government's contention that the payment was made as a cost of defending or protecting a title to property, the Court said:

" * * * But it is clearly a mistake to take the face of the claim as a test of whether a payment is a cost of defending a title. If the payment is to be reckoned as such, *it must be in fact made for the purpose of relieving the property of some lien or other hostile interests. The mere fact that, if it were sound in law, it would establish such an interest, does not prove that the taxpayer has paid to defend his title;* he may be completely confident that this is not peril; yet there may be other sound reasons for ridding himself of the suit. The cost of the mere contest may be more than the claimant is willing to accept; *the mere pendency of the suit may disastrously affect the taxpayer's general credit.* When that is the situation, the regulation does not cover, and the payment must be judged by some other measure. In the case at bar, if the Levitts were altogether satisfied with their lawyer's advice about Edelman's claim, if they settled with him only because they feared the effect of the publicity upon their credit, and so upon their business generally, the payment was not part of the cost of any of their property * * *." [Emphasis supplied.]

The case was reversed and remanded for further proceedings in accordance with the opinion expressed by the Court.

The case seems to me precisely in point and appellant was apparently of the same mind, devoting its efforts to the attempt to establish that, insofar as it holds that the taxpayer's subjective motive is material, Levitt has been overruled by implication by Lewis v. Commissioner, 1958, 2 Cir., 253 F.2d 821. I do not agree.

In Lewis, the taxpayer was an author. He expended eleven thousand nine hundred fifty dollars in defending successfully his wife's charge in a New York court that he was dangerously insane and resisting her attempts to have him committed. The taxpayer argued that the expenditures were *deductible business expenses rather than personal expenses* in that they were paid in protection of his trade or business, since commitment would have been detrimental to the sale of his books.

The Tax Court denied deduction, characterizing them as personal expenses, because it found that the taxpayer's primary interest was to maintain his freedom rather than to protect his business. The Court of Appeals agreed with the result of the Tax Court's decision, but followed "a somewhat different path, for we cannot agree that the peculiar personality characteristics of a taxpayer are determinative of his tax liability. That one taxpayer prizes his personal liberty more than his property, while another values property more highly, seems to us irrelevant to the allowance or disallowance of a claimed deduction." Lewis, at pages 824–825.

That decision holds merely that the personal characteristics of the taxpayer are not relevant. It does not overrule Levitt in its holding that "it is clearly a mistake to take the face of the claim [against taxpayer] as a test of whether a payment is a cost of defending a title." 142 F.2d 795, 797.

The two cases do not involve the same question and are not analogous. Levitt was concerned with whether an expenditure was deductible or should have been capitalized; Lewis was concerned with whether the expense was personal or

business. I am unable to agree that Lewis implicitly overrules Levitt.[4]

I agree with Judge Learned Hand's reasoning in Levitt, and find it unanswerable in testing the main question before us. The rule that "substance, not form, controls" works for the taxpayer as well as the government. "The origin and nature, and not the legal form, of the expense sought to be deducted determines the applicability of the words of § 23(a) [now § 212(2)]." Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, 594, 63 S.Ct. 1279, 1282, 87 L. Ed. 1607. "The nature of the transaction * * * controls the tax effects." Cotnam v. C. I. R., 1959, 5 Cir., 263 F.2d 119, 122, 70 A.L.R.2d 1035.

### III.

But even if the settlement were made to defeat the specific performance suit rather than to prevent receivership, I do not conceive of this as an expense incurred "in *defending* or *perfecting* title to property," [emphasis added] as contemplated in the Regulation [5] relied upon by appellant. This case strikes me as one in which the government fails to see the forest for the trees. The Regulation on which the government bases its claim must be read in the light of the statutes [6] with which it is in *pari materia*.

No case has been cited to us in which money spent in defeating a specific performance suit was considered money spent "in defending or perfecting title to property." Certainly, the title to the property is necessarily involved, but no more so, for instance, than is the title to property attached to secure the payment of the judgment in an ordinary suit for damages. In both cases the plaintiff or complainant *depends* on his adversary's title; he does not attack or deny the title, but desires access to the title. An alleged obligation to transfer title may be involved, but resistance to transfer is not defense of title.

We are here dealing with a Regulation distinguishing two statutes. The statutory authority from which the Regulation, T.R. 1.212(l) (k), is drawn is 26 U.S.C.A. § 263(a) (1): *"No deduction shall be allowed for—*(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate," and 26 U.S.C.A. § 212 (2): " * * * *allowed as a deduction* * * * expenses * * * (2) for the management, conservation, or maintenance of property held for the production of income." [Emphasis added.]

It is not claimed that this title is in any way clouded or that there is any doubt as to who is the true owner of it. It seems to me that everyone agrees that the taxpayer has a perfect title, and that all his opponent desired was to force transfer of that title to him. The expense incurred in combatting this attempted forced transfer did not touch the existing title. It related solely to an effort to protect the taxpayer against his opponent who was trying to enforce a transfer to him.

No "value" was added to the property in compromising the suit as is contemplated in 26 U.S.C.A. § 263(a) (1). In fact, the stock was immediately sold to Cage (the original prospective purchaser) for one million dollars, the same price contracted for in the aborted sale to Ainsworth. This is not, of course, conclusive; but it demonstrates the point that the "title" to the property was in no manner affected—only the obligation to transfer title was involved.

---

4. In fact, Lewis cites Levitt as authority on another point at page 827. See also Rassenfoss v. Commissioner, 1946, 2 Cir., 158 F.2d 764; and Hochschild v. Commissioner, 1947, 2 Cir., 161 F.2d 817, in which claims to title were incidentally involved and deductions were allowed. Cf. Brown v. Commissioner, 1954, 5 Cir., 215 F.2d 697, in which this Court recognized

that the purpose in making the payment was controlling, but held that proof of a purpose other than the defense or perfection of title was not made.

5. Treas.Reg. § 1.212(1) (k). See note 6, majority opinion.

6. 26 U.S.C.A. §§ 263(a) (1) and 212(2). See notes 4 and 5, majority opinion.

Treasury Regulation 1.212(1) (k), i. e., "defending or perfecting title," must be read in the light of the statutes from which it draws its authority. This manifestly contemplates some "permanent improvement or betterment" to one's legal claim to title,—not to one's claim to the right to combat the effort to force transfer of the admittedly perfect title. Title is involved; but the "defen[ce] or perfect[ion]" of title is not.

### IV.

The foregoing reasons, it seems to me, whether considered singly or in combination, require that the judgment of the trial court be affirmed. I respectfully dissent, therefore, from its reversal as ruled by the majority.

Rehearing denied; CAMERON, Circuit Judge, dissenting.