T.C. Memo. 1997-536


UNITED STATES TAX COURT


HAROLD LEVINSON ASSOCIATES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9575-95.                    Filed December 3, 1997.


<u>Richard M. Gabor</u>, for petitioner.

<u>Gary W. Bornholdt</u>, for respondent.



MEMORANDUM OPINION

RAUM, <u>Judge</u>:  The Commissioner determined deficiencies in
petitioner's Federal income taxes for the taxable years ending
January 31, 1990, and January 31, 1991, in the amounts of
$179,860 and $1,349, respectively.  The remaining issue for
consideration is whether an amount paid to settle a lawsuit is a

deductible business expense under section 162(a)[1] or a
nondeductible capital expenditure pursuant to section 263.  This
case was submitted on the basis of a stipulation of facts.

Petitioner, Harold Levinson Associates, Inc., (petitioner)
is a New York State corporation whose principal place of business
when the petition in this case was filed was Plainview, New York.
During and throughout the fiscal year ended January 31, 1990,
Edward Berro and Rita Berro each owned 50 percent of petitioner's
common stock.  Together, they owned all of the common stock in
petitioner during and throughout the taxable year ended January
31, 1990.  The relationship of Edward and Rita Berro is not
disclosed in the record.

In or about November 1987, petitioner, Edward Berro, and
Rita Berro, entered into an option agreement with Mark Goldman
and Barry Feldman (the optionees), whereby each of the optionees
was granted an option to purchase 24.5 percent of the common
stock of petitioner at an agreed upon exercise price.  In return,
the optionees made efforts to cause petitioner to become an
authorized cigarette stamping agent (New York Stamp Tax Agent) or
the equivalent thereof for the sale of cigarettes in the State of
New York.  Once acquired, a New York Stamp Tax Agent license

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

lasts indefinitely. Neither Mark Goldman nor Barry Feldman was ever employed by petitioner.

Pursuant to the terms of the Option Agreement, the exercise price for the option to purchase the 24.5-percent interest in petitioner was to be determined by the tangible net worth of petitioner on the exercise date of the option. The optionees had the right to exercise the option for a period of 60 days after the date on which petitioner became a New York Stamp Tax Agent. The options granted pursuant to the Option Agreement were to expire in or about April 1989, subject to extension for two additional 3-month periods. On or about March 17, 1989, Mark Goldman exercised his rights under the Option Agreement to extend for two additional 3-month periods the terms of the Option Agreement.

On or about September 13, 1989, petitioner was granted a license as a New York Stamp Tax Agent. Petitioner's acquisition of a New York Stamp Tax Agent license has resulted in a substantial increase to petitioner's gross sales, as evidenced by petitioner's Forms 1120 U.S. Corporation Income Tax Return for the taxable years ended January 31, 1991, and January 31, 1992.

On or about October 23, 1989, Mark Goldman notified petitioner, Edward Berro, and Rita Berro, of his intent to exercise his rights under the Option Agreement. On or about November 20, 1989, Goldman's request to exercise the option was

rejected. In or about December 1989, Goldman filed a verified complaint in the Supreme Court of the State of New York initiating litigation (the litigation) against petitioner, Edward Berro, and Rita Berro. The complaint alleged that petitioner and the Berros failed to honor the terms of the Option Agreement. Goldman sought specific performance under the terms of the Option Agreement, requesting that petitioner and the Berros be ordered to deliver the 24.5-percent equity interest in petitioner at the agreed upon exercise price. He also sought monetary damages in excess of $3 million.

On or about April 27, 1990, petitioner, Edward Berro, Rita Berro, and Mark Goldman, entered into an agreement settling the litigation. As stated in the settlement agreement, petitioner concluded that it was impracticable and hazardous to the continued viability of petitioner to permit Goldman to exercise his option and become a shareholder in petitioner. Pursuant to the terms of the settlement agreement, Mark Goldman is required to release petitioner and the Berros from any claims asserted in connection with the litigation. Petitioner is required to pay Mark Goldman the sum of $1 million in annual payments of $83,200 in satisfaction of all claims asserted in connection with the litigation.

In connection with the settlement of the litigation, petitioner claimed a lawsuit settlement deduction in the amount

of $529,000 on its Form 1120, U.S. Corporation Income Tax Return, filed for the taxable year ended January 31, 1990.  The $529,000 deduction claimed for that year represented the net present value of the $1 million lawsuit settlement.[2]

On March 7, 1995, respondent issued petitioner a statutory notice of deficiency asserting deficiencies in income tax for the taxable years ended January 31, 1990, and January 31, 1991.  The deficiency for the taxable year ended January 31, 1990, is based upon the disallowance of the $529,000 lawsuit settlement deduction claimed on petitioner's return for that year.[3]  The

_____

[2] According to the stipulation of facts, the Berros collectively owned 100 percent of the stock in petitioner "during and throughout the taxable year ended January 31, 1990."  Yet, the Option Agreement provides that the optionees have the option to purchase the stock "from the Company".  Moreover, petitioner, rather than the Berros, deducted the settlement amount on its return.  Thus, there is confusion in the record as to whether the Berros or petitioner was to be the seller of the stock under the Option Agreement.  Further, what we have here is a troubling obvious contradiction, particularly in view of provisions in the Option Agreement contemplating a change in the number of shares outstanding "in order that each Optionee [Gloldman and Feldman], upon exercise of his Option shall be entitled to purchase that number of shares of Common Stock necessary to acquire a 24.5% equity" interest in petitioner.  And the confusion is further compounded by the fact that there are strong indications in the record that there was actually a change in the number of shares outstanding because of the situation concerning Feldman, the other optionee.  Indeed, the record shows that Feldman actually acquired shares representing a 24.5-percent equity interest in petitioner.

[3] Since respondent's present theory for disallowing the settlement deduction was raised in the Amendment to Answer to Amended Petition, respondent bears the burden of proof with respect to that theory.  Rule 142(a).  However, the point was not
(continued...)

deficiency for the taxable year ended January 31, 1991, is based upon the disallowance of a $3,967 insurance deduction claimed on petitioner's return for that year.  Petitioner concedes the deficiency determination for the taxable year ended January 31, 1991, in the amount of $1,349.

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  But section 263(a) prohibits deductions for "Any amount paid out * * * for permanent improvements or betterments made to increase the value of any property or estate."  Section 1.263(a)-2(c), Income Tax Regs., provides examples of capital expenditures, including "The cost of defending or perfecting title to property."

In United States v. Gilmore, 372 U.S. 39 (1963), the Supreme Court held that whether litigation expenses are "business" or "personal" is determined by looking to "the origin and character of the claim with respect to which an expense [is] incurred".  Id. at 49.  This doctrine was amplified in Anchor Coupling Co. v. United States, 427 F.2d 429, 433 (7th Cir. 1970), cert. denied 401 U.S. 908 (1971):

> Taxpayer argues that Gilmore is inapplicable because we are asked here to determine whether a settlement constitutes an ordinary and necessary business expense

_____

³(...continued)
argued on brief, and nothing appears to turn on the burden of proof in this factually fully stipulated case.

> or a capital outlay and not whether a payment is a deductible business expense.  We disagree.  Although the two questions are admittedly different, substantially the same problems arise in each determination.  Thus in both cases the court must determine the tax consequences of monetary outlays made in connection with contesting a claim on the taxpayer's assets.  * * *

To determine the origin of the claim, the Court must consider "the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy."  Boagni v. Commissioner, 59 T.C. 708, 713 (1973)); Saltzman v. Commissioner, T.C. Memo. 1994-641.

United States v. Wheeler, 311 F.2d 60 (5th Cir. 1962), is instructive here.  The taxpayer owned controlling stock interests in 3 corporations.  He first entered into negotiations to sell the stock to an individual named Cage, but upon learning (mistakenly) that Cage had lost interest, the taxpayer entered into a sales agreement with Ainsworth.  Id. at 61.  After signing the latter contract, the taxpayer discovered that Cage was still interested in purchasing the stock.  The taxpayer also feared that "Ainsworth would probably 'bleed' the corporate assets" dry.  To prevent that, the taxpayer refused to sell his stock.  Ainsworth sued, alleging breach of contract and requesting

specific performance.  Id. at 62.  The taxpayer paid roughly $57,000 to settle the litigation.  Id. at 61.

The Fifth Circuit determined that the origin of the proposed deduction was the suit for specific performance, which revolved around the title to the stock.  Id. at 63.  The court concluded that the settlement payments the taxpayer made were capital expenditures.  Id. at 64; see Von Hafften v. Commissioner, 76 T.C. 831 (1981).

The origin of the claim in the present case was the dispute over title to 24.5 percent of petitioner's stock.  Mark Goldman agreed to use his best efforts to cause petitioner to become a New York Stamp Tax Agent.  In exchange, he was granted an option to purchase 24.5 percent of petitioner's stock.  Petitioner acquired a Stamp Tax Agent license in September 1989.  In a timely manner, Mark Goldman gave notice that he intended to exercise his option.  His request was rejected.

In response, Goldman filed suit in the Supreme Court of the State of New York.  In his verified complaint, he alleged:

> 13.  Plaintiff Goldman is ready, willing and able to tender the purchase price for the common shares of stock as set forth in the Option Agreement pursuant to paragraph 6 thereof.

> 14.  The shares of stock in the Company are unique in that they represent an interest in a Company possessing a New York Stamp Tax Agents [sic] License.

Goldman sought specific performance, requesting that petitioner and the Berros be required to deliver the 24.5-percent equity interest in petitioner at the agreed upon exercise price. He also sought monetary damages in excess of $3 million.

Petitioner, the Berros, and Goldman reached a settlement in April 1990. Goldman agreed to release all claims against petitioner and the Berros and dismiss the litigation with prejudice. In return, petitioner was required to pay Goldman $1 million in annual installments of $83,200.

The issue involved in the Goldman litigation was the ownership of the stock for which Goldman was willing to pay. The litigation was a suit for specific performance for title to the stock. The damages were based on the injury Goldman suffered because he was denied access to the stock. Petitioner and the Berros protected their ownership of the stock by removing Goldman's claim through the $1 million settlement. As a whole, it is clear that the initial litigation was a dispute over title to 24.5 percent of petitioner's stock. Since the settlement amount was paid to defend and perfect title to stock, it is a capital expenditure and thus nondeductible. As indicated in supra note 2, we are troubled by the question as to whose stock (petitioner's or the Berros') is involved in light of the possible contradictory state of the record. But in view of the explicit statement in the Option Agreement that the optionees

would have the right to purchase stock "from the company", and the fact that no issue has been raised by either party in that connection, we address the issue as though the stock of petitioner is involved just as the parties themselves have done.

Petitioner contends that the settlement amount represents lost compensation deductible under section 162(a). According to petitioner, Goldman saw the stock as a symbol of the accompanying employment contract and compensation it entailed. Petitioner asserts that since petitioner is a closely-held corporation and does not pay dividends, Goldman wanted the stock only to the extent it would provide compensation. Correspondingly, petitioner argues, petitioner would have been entitled to a compensation deduction for any amounts paid to Goldman. Petitioner characterizes Goldman in its brief as an employee seeking lost compensation analogous to back pay.

The flaw in this argument is its assumption that Goldman was an employee of petitioner. Petitioner stipulated that Goldman was never employed by petitioner. The record does not articulate Goldman's intentions. It seems a reasonable inference that Goldman pursued the stock sale because the stock represented not only future earnings, as petitioner alleges, but also control. Had he been able to purchase the stock, Goldman would have owned a significant minority of the corporation. Such control, arguably, may have been his goal. Whatever his intentions, it is

clear that the stock, and not simply money, was what he desired and pursued. The cases petitioner relies on, which involve amounts received upon cancellation of employment contracts, do not apply to the current situation.

Petitioner also contends that the outcome is controlled by section 83. Section 83(a) provides:

> (a) General Rule.--If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of--
>
> > (1) the fair market value of such property * * * at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over
>
> > (2) the amount (if any) paid for such property,
>
> shall be included in the gross income of the person who performed such services * * *

Section 83(h) gives a corresponding deduction under section 162(a) "to the person for whom were performed the services in connection with which such property was transferred".

Section 83 is not applicable here. First, section 1.83-6(a)(4), Income Tax Regs., provides that the deduction under section 83(h) does not apply to capital expenditures. We held above that the origin of the claim for which the settlement amount was paid was capital in nature. Thus, section 83(h) is inapplicable.

Second, section 83 does not apply to "the transfer of an option without a readily ascertainable fair market value".  Sec. 83(e)(3).  Section 1.83-7(b), Income Tax Regs., provides that where an option is not actively traded on an established market, the option does not have a readily ascertainable fair market value unless the taxpayer can demonstrate all of the following:

(i) The option is transferable by the optionee;

(ii) The option is exercisable immediately in full by the optionee;

(iii) The option or the property subject to the option is not subject to any restriction or condition * * * which has a significant effect upon the fair market value of the option; and

(iv) The fair market value of the option privilege is readily ascertainable in accordance with paragraph (b)(3) of this section.

The option in this case fails the first two conditions.  The Option Agreement states that "The Options are not transferable and are exercisable only by the Optionee, during his lifetime."  The option was also not exercisable immediately in full by Goldman.  The Option Agreement provides that the Optionees can exercise the options for 60 days, but only "after the date on which Company has become a New York Tax Stamp Agent".  In view of petitioner's obvious failure to satisfy the first two conditions, we need not even consider whether the third or fourth conditions have been met.

Petitioner paid the settlement amount to protect or retain title to its 24.5 percent of petitioner's stock.  That payment was a capital expenditure.  The Commissioner's disallowance of the business expense deduction claimed by petitioner is sustained.

Decision will be entered under Rule 155.