**LARCHFIELD CORPORATION,**
Plaintiff,

v.

**The UNITED STATES of America,**
Defendant.

**Civ. No. 8677.**

United States District Court
D. Connecticut.

March 22, 1962.

John L. Calvocoressi, Pelgrift, Dodd & Blumenfeld, Robert E. Cohn, Hartford, Conn., Goldstein, Judd & Gurfein, Silverson & Gelberg, New York City, for plaintiff.

Robert C. Zampano, U. S. Atty., District of Conn., New Haven, Conn., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., Attys. Dept. of Justice, Washington, D. C., for defendant.

ANDERSON, Chief Judge.

The plaintiff, a Rhode Island corporation, seeks in this action to recover certain alleged overpayments of federal income taxes made by two predecessor corporations for the fiscal years ending June 30, 1949, June 30, 1950 and December 17, 1948. The motion is, in effect, one for partial summary judgment, since it seeks to have decided the last two counts and only a portion of the first count of the three-count complaint. However, the only question before the court is this:

> May plaintiff's predecessor corporations deduct, for federal income tax purposes, legal fees and related expenses incurred by them during the aforesaid fiscal years in connection with a shareholder's derivative action?

The plaintiff, Larchfield Corporation, is the successor to The Aspinook Corporation, hereinafter referred to as New Aspinook. The legal fees and expenses, here in question, were paid out in connection with a shareholder's derivative action, which terminated on June 4, 1948 in a stipulation for judgment, a provision of which called for the formation of New Aspinook.

On or about November 19, 1946, Bernard R. Armour was the major shareholder of The Aspinook Corporation, hereinafter referred to as Old Aspinook. Armour had also acquired 50% of the stock of The Lawrence Print Works, Inc. (Lawrence) and 50% of the stock of Arnold Print Works, Inc. (Arnold); the balance of the stock of both corporations was owned by Old Aspinook. Lawrence, Arnold, and Old Aspinook each owned ⅓ of the stock of Union Bleachery, Inc.

The stockholder's derivative suit was brought in November, 1946, against Old Aspinook, Lawrence, Arnold, Bernard Armour, and other officers and directors of the corporate defendants, in the Su-

preme Court of the State of New York, and a similar suit was instituted in the United States District Court for the Southern District of New York. Thompson et al. v. Armour et al., Supreme Court of the State of New York, County of New York, 68 N.Y.S.2d 475; Samuel Thompson v. William Broadfoot, et al., U. S. District Court, Southern District of New York, December 5, 1946, Civil No. 39–137.

The state court case is the only one which needs to be considered here. The complaint, as amended, alleged five causes of action. These were:

1. Armour caused Aspinook to make a gift to him of a 50% interest in the Lawrence Print Works, Inc.

2. Armour caused Aspinook to make a gift to him of a 50% interest in the Arnold Print Works, Inc.

3. Armour caused the corporate defendants to buy from other corporations in which he was interested at exorbitant prices and to sell to them at inadequate prices.

4. Defendants caused the corporate defendants to adopt bonus plans, which resulted in excessive payments to Armour and other individual defendants.

5. Defendants deprived Aspinook of the opportunity of acquiring Union Bleachery, Inc. by causing the same to be purchased by Aspinook, Lawrence and Arnold in equal shares.

By way of relief, plaintiffs sought to have a trust impressed in favor of Old Aspinook on any shares of stock in Lawrence and Arnold, owned by Armour, or for an accounting of the proceeds of any sale or disposition of such shares made by him; to require an accounting by all defendants, other than Old Aspinook, for their profits and for damages sustained by Old Aspinook as a result of the wrongs alleged in the complaint; and to award plaintiffs the cost and expenses of the action, including reasonable counsel fees.

As stated above, the parties, on June 4, 1948, entered into a stipulation of settlement which provided for a disposition of all of the issues in the case. The court appointed a Referee, Hon. J. Edward Lumbard, Jr., who held hearings and submitted a comprehensive report recommending court approval of the proposed settlement.

The stipulation of settlement provided that Old Aspinook, Lawrence, and Arnold would be consolidated into New Aspinook, which was to be created for this purpose. Armour agreed to receive 102,000 shares fewer than the 388,000 shares in the new corporation which he would otherwise have been entitled to under the terms of the consolidation. Though not a part of the stipulation for settlement, Armour agreed to forego any right to any bonus from the three corporate defendants for the fiscal years ending June 30, 1947 and June 30, 1948. These bonuses would have totalled $266,-000. Old Aspinook also agreed to pay any expenses which might be assessed against it by the court, including fees of attorneys and accountants for the plaintiffs and the costs of the referral.

In November, 1948, the Supreme Court of New York, after notice and hearing, approved the report of the Referee and the proposed consolidation and ordered that the suit be dismissed on the merits upon completion of the steps agreed to be taken to effectuate the settlement. In addition, New Aspinook was ordered to pay attorneys' and accountants' fees aggregating $355,692.83. The consolidation was effected in December, 1948, and the suits in both the state and federal courts were dismissed.

The $355,692.83 in legal and professional fees represented expenses of the plaintiffs, of the plaintiff-intervenors and the fee of the Referee. This amount was paid by New Aspinook, which claimed it as an income tax deduction for the fiscal period which ended on June 30, 1949. Of this amount, $88,538.50 was

allowed as a deduction and the balance of $267,154.33 was disallowed. In its amended answer the defendant alleges, as a defense by way of set-off or recoupment, that the sum of $88,538.50 was erroneously allowed as a deduction.

In addition to the legal and professional fees noted above, New Aspinook paid legal and professional fees to its own attorneys and accountant for services rendered in defense of the suit. Portions of these amounts were attributable to representation of the corporate defendants and other parts were allocable to representation of the individual defendants. The by-laws of both Old Aspinook and New Aspinook provided for indemnification of directors against expenses incurred in defense of actions resulting from their positions, other than those in which they should be adjudged liable for negligence or misconduct. The portions attributable to representation of the corporate defendants, except for $5,000 incurred by Old Aspinook for services rendered in arriving at a settlement, were generally allowed as deductions and the amounts attributable to representation of the individual defendants were disallowed. However, as with the $88,538.50 noted above, the defendant now takes the position that it erred in allowing any portion of the legal and professional fees as a deduction.

The parties, for the purpose of this motion, have entered into a stipulation of facts, which incorporates by reference the report by the Referee to the Supreme Court of New York.

The plaintiff claims that these attorneys' fees and expenses are deductible as "ordinary and necessary expenses" under the provisions of § 23(a) (1) (A) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 23(a) (1) (A), which in pertinent part reads as follows:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

The defendant claims that the attorneys' fees and expenses are not deductible because the primary purpose of the derivative action was the perfection of title in Old Aspinook of its shares in Lawrence and Arnold which were in Armour's name. It asserts that the governing law is Title 26 C.F.R. § 29.24–2, which provides that the cost of defending or perfecting title to property is a capital expenditure, to be considered a part of the cost of the property, and, therefore, is not deductible as a business expense.

■ There are several decided cases in which a determination has been made between these two claims, i. e. whether the facts of the particular case show the expenditure for attorneys' fees and expenses in some past litigation is an "ordinary and necessary expense" which is, therefore, deductible; or is "a cost of defending or perfecting title to property" which is, for that reason, not deductible. In these cases the test used to decide whether the facts fall in one category or the other is, "What is the main and primary purpose of the litigation?" Hochschild v. Commissioner, 161 F.2d 817 (2 Cir. 1947); Sergievsky v. McNamara, 135 F.Supp. 233 (S.D.N.Y. 1955); Industrial Aggregate Company v. United States, 284 F.2d 639 (8 Cir. 1960); Lomas & Nettleton Co. v. United States, 79 F.Supp. 886 (D.Conn.1948).

The application of this test to the present case requires a consideration of the pleadings in the state court action, the settlement agreement, the stipulation of facts, the report of the Referee and the judgment in the Supreme Court of New York. Generally described, the state court suit was a derivative action brought by a group of minority shareholders of Old Aspinook, charging that Armour, who was alleged to have had working control of the corporation, used this control to enrich himself at the ex-

pense of the corporation by "diverting to himself corporate opportunities and assets which properly belonged to Aspinook." The allegations in the five specific causes of action, above mentioned, reveal a variety of claims, no one of which stands out more prominently than the others. The plaintiffs appear to have alleged everything they could think of on which they might hope to predicate a recovery regardless of substance or availability of proof. It is only after the adversary principle had been at work and negotiations had progressed to the point of settlement that the principal claim of real substance emerged. That claim is contained in the second cause of action which alleges that Armour caused Old Aspinook to make a gift to him of a 50% interest in the Arnold Print Works, Inc.

Arnold was incorporated for the purpose of buying a plant at Adams, Massachusetts from Beacon Industrial Corporation. Arnold was capitalized at $350,000 consisting of $250,000 in common stock, which was issued to Old Aspinook, and of $100,000 of 6% cumulative preferred stock which Arnold had the option of issuing and delivering to Beacon Industrial Corporation after a particular date in part payment of the balance of the purchase price. Old Aspinook had borrowed $250,000 on a note endorsed by Armour, all of which, on July 28, 1942, it advanced to Arnold in return for its common stock. At a meeting of the Old Aspinook directors on March 11, 1943, a recapitalization of Arnold was proposed for the ostensible reason that it had originally been intended that Armour and Old Aspinook would share in the ownership of Arnold. The proposed recapitalization was adopted and the stock of Arnold was reclassified. The $100,000 of preferred stock held by Beacon was continued; Arnold issued $250,000 of second preferred stock in exchange for the common stock held by Old Aspinook; and 1,000 shares of common stock of $1 par value, half being sold to Armour for $500 and the other half being sold to Old Aspinook for a like sum.

After a full review of the testimony received by him, relative to the acquisition by Armour of the Arnold stock, the Referee concluded:

" * * * In the Arnold transaction Armour put up nothing and contributed only the contingent liability of his endorsement on the $250,000 note, the necessity for which is arguable at best. Furthermore, Aspinook was in a much stronger position financially in July, 1942, than it had been in August, 1941 at the time of the Lawrence commitment.

"On a view of the record before me it is my opinion that the trier of the facts would probably find that the plaintiffs have sustained the burden of proof; that there was never any intention at the time of the purchase of Arnold that Armour should have a one-half interest; that the action of the defendant directors in permitting Armour to acquire a one-half interest was an after-thought which originated approximately in March, 1943, and that the transfer to him of one-half of the common stock in June, 1943 for $500 amounted to a gift of corporate assets. Therefore, there is a strong likelihood that if the action were tried the trial court would impress upon Armour's 500 shares of Arnold stock a trust for the benefit of Aspinook and would compel Armour to return such stock to Aspinook.

\* \* \* \* \* \*

"Of the five causes of action, only one, namely the second cause of action with respect to Arnold Print Works, Inc., appears to me to have sufficient merit to warrant the belief that the plaintiffs would probably prevail at a trial."

The only other cause of action which appears to have had any substance to it was the fourth, concerning bonuses.

The referee found that some of the bonus plans were voidable. Armour, however, informally waived any bonus claims of his own, for the years 1947 and 1948 and the bonus issue was not included in the formal stipulation for settlement. However, the Referee found that the litigation, in effect, brought about Armour's waiver of the 1947–48 bonuses, which benefited the companies to the extent of $266,000.

█ While claims in the complaint in the New York suit sought the impressment of a trust upon both the Lawrence shares and the Arnold shares held in the name of Armour, as well as other relief based upon various allegations of breaches of their fiduciary duties by the officers and directors, it is, as Judge Hand said in Levitt & Sons v. Nunan, 142 F.2d 795, 797 (2 Cir. 1944), "Clearly a mistake to take the face of the claim as a test of whether a payment is a cost of defending a title." See also discussion in Industrial Aggregate Co. v. United States, supra. With the benefit of hindsight the court considering the tax question can survey all aspects of the record of the trial on which the claim for deductions is based, including the pleadings, the evidence, the stipulations for settlement (if there is one) and a judgment (if one is entered); and also including evidence of the purposes and intentions of the parties in bringing and defending the suit and carrying it through to judgment or settling it before judgment or before trial. Out of this basic material the court must determine what the main and primary purpose of the litigation was. In the present case the court has the advantage of a Referee's report in which the evidence, which the parties were prepared to use at the trial, was presented and carefully analyzed and weighed by the Referee, who drew certain conclusions from it, on the basis of which he decided whether the stipulated settlement was fair and just.

From these materials this court now concludes that the principal purpose of the New York Supreme Court case was to restore title to the Arnold shares to Old Aspinook. The shares had originally belonged to Old Aspinook and had been transferred to Armour without consideration a little less than a year after Old Aspinook had purchased the outstanding shares of Arnold. The transfer took place about the time it became apparent that Arnold was by all odds the most promising and valuable of the three subsidiary corporations. The stipulation for settlement dealt solely with a merger of Arnold, Lawrence and Old Aspinook resulting in New Aspinook; and a restoration to the shareholders of Old Aspinook, via shares in New Aspinook, of a large portion of the Arnold stock to which old Aspinook had originally had title. It was less than all of the Arnold stock in Armour's name because the stipulation was a compromise. But it was the power and expectancy inherent in the ownership of the stock that the plaintiffs were primarily seeking on behalf of Old Aspinook and not money damages, which were sought only in the event that the shares of stock were beyond reach. The restoration was effected through the taking by Armour of 102,000 shares less in New Aspinook than he otherwise would have been entitled to if he had been able to defend his claim of title to all of the Arnold shares in his name. No mention of damages was made and none was included.

As the Lawrence shares were also claimed by the plaintiffs, something should be said about the circumstances relating to the Lawrence shares which distinguish them from those surrounding the Arnold shares. It cannot be said that there was ever any reputable issue of title concerning the Lawrence shares held by Armour. Old Aspinook never owned them. It never would have acquired its own block of Lawrence shares but for Armour's financing of the purchase. Far from depriving Old Aspinook of a corporate opportunity, Armour provided it with the opportunity to own the block that it had. There was never any transfer of Lawrence shares by Old Aspinook to Armour without consideration. Therefore the present issue as to the

Lawrence shares comes within the ruling in the Hochschild case, supra,

The taxpayer in Hochschild had been forced to defend against charges of breach of fiduciary duty to American Metal Company. He had, along with other officers, directors and employees, acquired shares in Climax Molybdenum Company at the invitation of American Metal and at a time when American Metal contemplated the acquisition and organization of Climax. Plaintiffs in the derivative action sought to impress a constructive trust on the Climax shares owned by the taxpayer. Having succeeded in defending against these charges, the taxpayer sought to deduct the legal fees incurred in that action as ordinary and necessary business expenses. The Commissioner claimed the purpose of taxpayer's defense was the defense or perfection of title and disallowed the claimed deduction. On appeal, the Court of Appeals for the Second Circuit, Judge Frank dissenting in part, held the entire amount of the legal fees deductible as an ordinary and necessary business expense.

Armour's purchase of the Lawrence stock followed essentially the same pattern as did Hochschild's purchase of the Climax stock. However, Armour's participation was of greater advantage to his corporation than was Hochschild's since without his participation Old Aspinook would not have been in a position to profit by the opportunity thus presented.

Had Armour been required to provide for his own defense, as far as the Lawrence claim was concerned, any attorney's fees he thereby incurred would have been deductible by him as ordinary and necessary expenses under the rule in Hochschild. The fact that New Aspinook was obliged to provide such defense should not alter the result. Similarly, the corporate taxpayer should be allowed to deduct as a business expense that portion of its legal and professional fees which might properly be allocable to the segment of the derivative suit which concerned the Lawrence stock.

The Sergievsky case, supra, arose out of the same derivative suit which gave rise to Hochschild. The court accepted the determination of the court in Hochschild that the primary purpose of the derivative action had been "to impress a constructive trust upon that stock in order to facilitate an accounting for profits and damages." Having taken that view of the derivative action, it was a simple matter for the court to hold that the expenses were properly deductible under § 23(a)(2), which is to be read in *pari materia* with § 23(a)(1). Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945).

In Lomas & Nettleton, supra, the settlement of suits, brought by the receiver of a subsidiary of the taxpayer and others, included a sale of the subsidiary's residual assets to the plaintiff taxpayer. The subsidiary had common directors with the taxpayer, and the suit was based on the domination of the subsidiary by the taxpayer through these directors. In the course of its opinion (79 F.Supp. at 891) the court said,

"Nowhere in said amended complaint did the plaintiff-receiver on behalf of the Lenox estate claim title to any specific assets in possession of the plaintiff or any equitable lien thereon."

The settlement of the cases called for a payment by the taxpayer to the Receiver for Lenox, in cash, plus a waiver by the taxpayer of any right to participate in a certain cash distribution to be made by the Receiver to shareholders and the purchase by the taxpayer of all of the Lenox estate assets other than cash. The acquisition of these assets was not an original purpose of the suits and came in as the result of a sale proposed and agreed upon as an incident of the settlement. While holding that the value of the assets purchased should be considered a capital expenditure, the court ruled that the remainder of the payments made in settlement, and the legal fees incurred, were ordinary and necessary business expenses and properly deductible under § 23(a)(1)(A). Though the

original actions sought in part to rescind the earlier purchase of shares in the subsidiary by the taxpayer, the court found this only incidental to a suit for an accounting, which was the primary purpose of the suits, rather than the perfection or defense of title.

In Levitt & Sons v. Nunan, supra, the taxpayer was the ultimate transferee of certain property which its transferor had allegedly acquired improperly. Expenditures made in settlement of a threatened suit were claimed as business deductions by the taxpayer. Upon remand from the Court of Appeals for further findings, the Tax Court found as a fact that taxpayer entered into the settlement because it feared the success of the threatened suit and the resultant loss of the property in question and not, as taxpayer claimed, because it wished to avoid unfavorable publicity engendered by the suit which would prove injurious to its credit standing and to several business deals then pending. There, as with the transactions leading to Armour's acquisition of the Arnold stock, the property had been in the hands of the corporation before it was delivered to taxpayer's transferor. The facts sustained a determination that the expenses were incurred in defense of title and were, therefore, capital expenditures. Thus the Levitt case is somewhat more comparable to that part of the present action which is concerned with the recovery from Armour of the Arnold shares. But Hochschild, Sergievsky and Lomas and Nettleton are readily distinguishable from that phase of this case. In none of those cases did the attorneys' fees and expenses, sought to be deducted, arise out of a case where title to specific shares of stock or to other property was sought to be restored to one who had once held it; in all of them the whole thrust of the actions was for accounting and damages for breach of fiduciary duty and any question of title involved was merely incidental.

With regard to the Arnold shares, however, the purpose of the action was to restore to Old Aspinook title in shares that it had once held. Armour was defending his claim of title to those shares. The plaintiffs had substantial and reputable evidence to prove the claim, and the settlement, though a compromise, in effect recognized Old Aspinook's title to the shares. It was the one cause of action which brought the defendants to terms; and the stipulation for settlement centered about it. If there was any main purpose to the litigation, it was to be found in the assertion of title to the Arnold shares. Certainly this issue was not incidental to allegations of breaches of fiduciary obligation by officers and directors.

It cannot be said, in this regard, that Armour, like Hochschild (Hochschild v. Commissioner, 161 F.2d 817 at 819) " * * * but fended off an abortive attack upon the conduct of his business as a fiduciary and by freeing himself from liability to his corporation to account for such conduct put all of his property beyond the reach of his then accusers." This is not to say that the expenditure is deductible in cases where the one defending title wins, and it is non-deductible when he loses. But in determining the main purpose of a suit, consideration must be given to the basis which the plaintiffs have for each of their several claims and only those claims will qualify which have a reasonable substance to them. It may be very difficult to distinguish between two or more claims which disclose, respectively, two or more purposes. Moreover, the purpose may vary as to different defendants.

In the present case the principal and most substantial claim concerned the Arnold shares; and, if the court is compelled to designate one set of allegations or one cause of action as the primary purpose, it would have to choose the issue of the title to the Arnold shares as embodying that primary purpose. However, it is plain that the plaintiffs sought to recover against all the defendants on the other causes of action on the theory of breach of fiduciary duty. It may be that some of these claims were made more hopefully than confidently, and the course of the litigation and settlement

show that there was little reason to give validity to the effort to recover damages except in connection with some of the bonus plans. In any event the plaintiffs had the purpose of recovering anything they could in damages, and the defendants had the purpose of preventing their doing so. The issues on the first, third, fourth and fifth causes of action could not reasonably be regarded by anyone as involving the title to any specific property even though they involved Armour and Old Aspinook. Certainly they were in no way incidental to the title issue concerning the Arnold shares. The defendants other than Armour had no title to the Arnold shares and were not, even on behalf of Old Aspinook seeking to restore title to Old Aspinook. They were defending themselves against the breach of fiduciary duty charges; and, even though this may have included some activity on their part in connection with the placing of title to the Arnold shares in Armour, they themselves were not involved as defendants in the issue of title recovery.

It is, therefore, apparent that a rigorous and inflexible application of the "primary purpose doctrine" would lead to an absurd result. How can it logically be said, for example, that the issue concerning the bonus plans is incidental to the dispute over the title to the Arnold shares and that the expenses of the defendants in defending against charges of creating improper bonus plans should be treated by Old Aspinook as an addition to the cost of the Arnold shares?

■■ Such a result would be manifestly unjust. Where the main and primary purpose of the litigation is for an accounting and damages for an alleged breach of fiduciary duty and any issue involving the defending or perfecting of title is merely incidental, there is reason to give the taxpayer the benefit of the doubt and permit him to deduct all of his expenses and attorneys' fees without requiring the difficult task of allocating them between the different issues or purposes. Where, as here, there is more than one purpose in the litigation out

of which the claim for deductions for attorneys' fees and expenses has arisen and the major or most important of the purposes is the "defending or perfecting of title to property," the regulation (§ 29.24–2) should not be construed to apply to the expenses of the defense of other issues in the case which, except for the presence of the title issue, would clearly be "ordinary and necessary expenses." To construe it in such a fashion would, in effect, allow a regulation, partially to repeal a statute, and would result in an unauthorized and unjust tax exaction upon the taxpayer.

On the stronger facts of this case where the dominant purpose of the derivative action was the restoration of title to shares of stock but at least one other less dominant and less substantive purpose was present, the cogent reasoning of Judge Frank is his dissent in Hochschild should apply.

■ The court concludes that the claimed deduction of attorneys' fees and expenses here sought to be recovered cannot be classified solely as a capital expenditure or as deductible business expense. The amounts expended in behalf of Armour and Old Aspinook in effecting a settlement of the derivative claims pertaining to Armour's acquisition of the Arnold stock must be deemed a capital expenditure as in the Levitt case. The amounts expended in defending the other portions of the suit, including those spent in defending against the threat to the Lawrence stock, were ordinary and necessary business expenses and were properly deductible. The total amount expended by New Aspinook, which represented the legal and professional fees of the plaintiffs and plaintiff-intervenors in the derivative suit and the costs of referral, is to be apportioned on the same basis.

Prior to the entry of judgment the parties are directed to seek agreement as to the allocation in dollar amounts of expenses and attorneys' fees, in conformity with this opinion. Failing such agreement a special master will be appointed to make findings in this regard.