J. C. McCaa, Sr. and Maude McCaa v. Commissioner.
McCaa v. Comm'r
Docket No. 543-64.
United States Tax Court
T.C. Memo 1967-152; 1967 Tax Ct. Memo LEXIS 106; 26 T.C.M. (CCH) 711; T.C.M. (RIA) 67152; July 19, 1967
Leon B. Catlett, 727 Pyramid Life Bldg., Little Rock, Ark., *107 for the petitioners. Walter O. Johnson, for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent determined that petitioners' income tax should be increased in the amount of $4,509.58 for the taxable year 1960. The sole issue presented for our consideration is whether the payments made by petitioners for legal fees and in settlement of a claim for personal injuries are deductible under the provisions of the Internal Revenue Code [1] in arriving at their net taxable income. Findings of Fact Some of the facts have been stipulated and are found as stipulated. J. C. McCaa, Sr. and Maude McCaa, sometimes hereinafter referred to as petitioners, are husband and wife and during the taxable year 1960 resided in West Memphis, Arkansas. They filed a joint Federal income tax return for the year 1960 with the district director of internal revenue, Little Rock, Arkansas. J. C. McCaa, Sr., hereinafter sometimes called petitioner, was an employee of the McCaa Chevrolet Company. In addition, he was engaged in the investment business *108 under the name of Southern Investment Company and the real estate business under the name of McCaa Real Estate Company. Southern Investment Company was a finance company which handled paper on cars sold by the McCaa Chevrolet Company. Although in some years it made a small amount of money, the finance company reported a net loss of $846.57 in 1960. McCaa Real Estate Company owned several pieces of commercial property. In 1960 petitioners reported $2,000 as income from this business. In 1960 petitioners reported on their income tax return $1,400 as rental income from farm property. In addition, they reported dividend income in the amount of $451.40. McCaa Chevrolet Company, an Arkansas corporation, hereinafter sometimes referred to as the Company, was a Chevrolet dealership which sold and serviced automobiles. Its place of business was West Memphis, Arkansas. During 1960 the issued and outstanding capital stock of the Company was owned as follows: Name of Stockholder
Percent of Ownership
J. C. McCaa, Sr.
33 1/3%
Maude McCaa
18 1/3%
J. C. McCaa, Jr.
33 1/3%
P. G. Para
15 %
The principal duty of J. C. McCaa, Sr. as an officer and employee of McCaa *109 Chevrolet Company was the handling of its financial affairs. P. G. Para acquired his stock in McCaa Chevrolet Company from J. C. McCaa, Sr. P. G. Para made his living as an employee of the Company. J. C. McCaa, Jr. is the son of the petitioners. In addition to being a stockholder he was an officer and full time employee of McCaa Chevrolet Company. In 1960 J. C. McCaa, Jr. was about 30 years old, married and the father of three children. Petitioners were very close to their son and his family and had a great deal of affection for their son's wife and three children. J. C. McCaa, Sr. had strong feelings about divorce. He did not believe in divorce at all, and under no circumstances if children were involved. McCaa Chevrolet Company employed about 50 employees. It owned property and had maintained a credit rating at its bank since 1935. The company could borrow money and enjoyed a good reputation in the business. General Motors Acceptance Corporation, hereinafter called G.M.A.C., was an automobile finance company. McCaa Chevrolet Company was required to maintain a reserve account with respect to cars sold that were financed by G.M.A.C. Neither J. C. McCaa, Sr. nor any other *110 employee of McCaa Chevrolet Company could have drawn on this account for their own personal use. The Company maintained its G.M.A.C. dealer reserve account with a bank in Memphis. In 1960 this account totaled approximately $66,000. Maude McCaa was not an employee of the Company. She played no part in the business operation of the Company other than that of a stockholder. J. C. McCaa, Jr., along with the sales manager, was in charge of advertising for the Company. In that capacity he became acquainted with Norma Elaine Johnson who was selling advertising for a radio or television station or both. Norma was unmarried and lived in an apartment in Memphis. The acquaintance of McCaa, Jr. and Norma developed into an "association" or affair. The "association" did not always run smoothly and on a date, probably late in August 1960, Norma drove her Cadillac automobile through the front of the Company's place of business. Petitioner McCaa, Sr. was not at the place of business at the time but was notified of the incident by telephone while at home. Norma was not arrested or charged with misconduct although the police were at the scene very shortly after the occurrence, nor was she called *111 upon to account for any damage done. [2]
About one month later, shortly after the 9 p.m. closing hour and while the night watchman was performing various chores incident to the closing of the place of business and only he and McCaa, Jr. were on the premises, Norma appeared carrying a gun and was admitted by the night watchman. Sometime thereafter while McCaa, Jr. and Norma were in McCaa, Sr.'s office the gun was fired, shooting a hole in the paneling. The night watchman called the police who came and took Norma to the police station, entered the incident on the records and then released her. [3] The next day the police inquired of petitioner if he desired to prosecute her for the shooting incident but he declined to do so. After the automobile driving episode or the shooting incident, one or both, Norma placed *112 telephone calls to McCaa Chevrolet Company in an effort to talk to McCaa, Jr. The office manager advised McCaa, Sr. of these calls. Norma did not place any of the calls to McCaa, Sr. When her calls for McCaa, Jr. were not put through the switchboard, Norma became very abusive in her language. Following the automobile driving episode McCaa, Sr. knew Norma's name and that the automobile was hers. He also became aware, if he did not already know, of his son's "association" with Norma. He was greatly disturbed and told his son that it would be best for his family and everybody concerned if he ceased his "association" with Norma. It was McCaa, Jr.'s explanation that he had broken off or was trying to break off with Norma and it was that which had caused the automobile and the shooting episodes and the telephone calls. It was generally understood by the employees of the McCaa Chevrolet Company that Norma's visits and calls to the Company's place of business were occasioned by her association with petitioners' son, J. C. McCaa, Jr. On or about September 27, 1960, a few days after the shooting episode, the petitioners went to Norma's apartment located in Memphis, Tennessee. They went *113 there for the purpose of asking her to leave town and go back to New York where she came from. While at Norma's apartment, petitioner told Norma that he started to have her arrested a few days before, and that the next time she came to West Memphis he would have her arrested. Other words were exchanged between petitioner, Maude McCaa, and Norma and the visit or interview reached its climax when J. C. McCaa, Sr. "slapped" Norma, holding her arm as he did so. After petitioner "slapped" Norma, he and his wife left the apartment and drove home to West Memphis, Arkansas. Norma did not prefer charges against petitioner and his wife as a result of this incident. J. C. McCaa, Jr. did not accompany the petitioners to Norma's apartment. Petitioner received no newspaper publicity with respect to the incident at the apartment. After the episode at Norma's apartment petitioner received a letter from a lawyer engaged by her. In the letter it was stated among other things that Norma's ribs were broken and that a suit for damages in the amount of $25,000 would be instituted against petitioner for assault and battery. In the letter, or later to petitioner or his attorney, Norma's lawyer also *114 stated that he was considering attachment of the McCaa Chevrolet Company reserve account with G.M.A.C.
Noting that the reserve account was the property of McCaa Chevrolet Company, petitioner's attorney advised him that if the reserve account should be attached he could secure a release of the account from the attachment. On November 22, 1960, the petitioners paid Norma the sum of $10,000 in the settlement of her claim against them for the occurrences in her apartment on September 27, 1960, when she was "slapped" by McCaa, Sr. Upon receipt of the $10,000 Norma executed and delivered to petitioner a general release of her claim. The release reads as follows: GENERAL RELEASE To all to whom these presents shall come or may Concern Greeting: Know Ye, That I, Norma Elaine Johnson, unmarried, Memphis, Shelby County, Tennessee, for and in consideration of the sum of Ten Thousand & No/100 dollars ($10,000.00) lawful money of the United States of America to me in hand paid by J. C. McCaa, Sr., Mrs. Maude W. McCaa and J. C. McCaa, Jr. the receipt whereof is hereof acknowledged, have remised, released, and forever discharged, and by these presents do for myself, my heirs, executors, *115 administrators and assigns, remise, release and forever discharge the said J. C. McCaa, Sr., Mrs. Maude W. McCaa and J. C. McCaa, Jr. their heirs, executors, administrators and assigns, of and from all, and all manner of action and actions, cause and causes of action, suits, controversies, agreements, promises, trespasses, damages, judgments, claims, liabilities and demands whatsoever, in law or in equity, which against J. C. McCaa, Sr., Mrs. Maude W. McCaa and J. C. McCaa, Jr. I ever had, now have or which my heirs, executors, administrators, or assigns, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever. And more especially but without limitation of the foregoing general terms, I do hereby release and forever discharge the said McCaas and each of their heirs, administrators and assigns, from any and all claims for damages, injuries or losses I now have or hereafter can, shall or may have by reason of an accident which occurred in the State of Tennessee at on Holiday Towers, in the City or Town of Memphis on or about Sept. 27, 1960. It is further understood and agreed that the acceptance of this release and the payment of the consideration *116 herein named is not to be construed in any court whatsoever as an admission of liability on the part of the said J. C. McCaa, Jr., Maude W. McCaa and J. C. McCaa, Jr. for the causing of the said accident above referred to. The incident occurring on or about September 27, 1960 mentioned above, which is particularly included in this release grows out of an altercation at the Holiday Towers Apartment Hotel on Madison Avenue, Memphis, Shelby County, Tennessee, on or about September 27, 1960, at which time I, the claimant, Mrs. Norma Elaine Johnson, claim to have been physically assaulted and struck by J. C. McCaa, Sr., none of which is admitted by any of the parties in whose favor this release is executed and liability to the claimant is denied by all of the aforesaid three parties. IN WITNESS WHEREOF, I have hereunto set my hand, and seal, the 22nd day of November in the year one thousand nine hundred sixty. /s/ Norma Elaine Johnson (Seal) The release was examined and considered sufficient and acceptable by J. C. McCaa, Sr. and his attorney before payment of the $10,000 was made. No other releases were given by Norma with respect to the incident. McCaa, Jr. did not participate *117 in the settlement but was included by petitioners as a party to be released and discharged by Norma from any claim arising out of the incident at the apartment because of his past associations with her. Neither the petitioners nor their attorney considered it necessary to include the McCaa Chevrolet Company among the parties to be released and discharged by virtue of the $10,000 payment made to Norma. The petitioners paid their attorney $1,000 in 1960 for the legal services rendered to them with respect to the incident at Norma's apartment and in working out the settlement. At some time not shown McCaa, Jr.'s wife learned of his association with Norma but whether it was prior to the automobile incident or the shooting episode does not appear. Presumably she did later obtain a divorce from McCaa, Jr. inasmuch as he and Norma were later married. In reporting his income from salary for the taxable year 1960, petitioner submitted a separate schedule which showed various items as expenses of earning his $34,000 salary which he received as an employee of the Company. On said schedule he listed miscellaneous expenses relating to his ownership and use of an airplane for business purposes *118 in the total amount of $2,543.70, to which he added $11,000 as "Attorney Fees and settlement costs of liability suit affecting the management and conservation of business property and production of income," increasing the overall expense to $13,543.70 and resulting in a reported net salary of $20,456.30. The latter amount was entered in item 5 of petitioner's joint income tax return as his salary earned at McCaa Chevrolet Company. The $10,000 paid to Norma in settlement of her claim against petitioners for personal injuries and the $1,000 payment to their attorney for legal fees incurred in connection therewith were personal expenditures on the part of petitioners. Opinion Respondent, in his notice of deficiency, determined that the $10,000 compromise settlement and $1,000 legal fee paid by petitioners with respect to a claim for personal injuries resulting from the petitioner striking a girl friend of their married son are not deductible by petitioners under any of the provisions of the Internal Revenue Code of 1954. Petitioners, in opposition, contend that said payments were properly deductible as ordinary and necessary expenses incurred in the "preservation of income-producing *119 property," and in connection with their profit-seeking activities. If petitioners are to prevail herein, they must find support in either section 212(2)[4] or 162(a)[5] of the 1954 Code. We do not believe that the *120 expenses in question are deductible either as ordinary and necessary expenses incurred in the management, conservation, or maintenance of property held for the production of income within the purview of section 212(2), or as ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business under section 162(a), supra. Whether the expenditures incurred by petitioner in settling Norma's claim are characterized as "business" or "personal" depends on whether or not this claim arose in connection with petitioner's profit-seeking activities. It does not depend on the consequences that might result to his income-producing property (i.e., the value of his stock interest in the Company) from a the origin and character of the claim with respect to which an expense was incurred rather than its potential effect upon the failure to defeat or settle the claim. It is now well settled that financial fortunes of the taxpayer constitute the controlling basic test of whether an expense is deductible under section 212 of the 1954 Code. United States v. Gilmore, 372 U.S. 39, *121 and United States v. Patrick, 372 U.S. 53. In essence, petitioner urges that the principal source of his income was from the McCaa Chevrolet Company, and that the primary purpose for making the $10,000 payment to Norma was to protect his investment in the Company. It is petitioner's position that the adverse publicity resulting from threatened litigation against him by Norma and the threatened attachment of the reserve account maintained by the Company with General Motors Acceptance Corporation would have ruptured further the business relationship between the two companies and possibly would have resulted in the cancellation by the latter of the Company's franchise. Petitioner argues that if this were to occur his investment and earning capacity with the Company would be impaired or destroyed. Apart from petitioner's vague testimony in this regard, no affirmative evidence was submitted to substantiate the reality of his apprehension. We are not impressed by the suggestion that the possible attachment of the Company's dealer reserve account was a material factor which prompted petitioner's settlement of the claim since such factor was merely a potential consequence on *122 his fortunes from failure to defeat Norma's claim and is not determinative of the issue. Moreover, petitioner, on cross-examination, admitted that his attorney had advised him prior to settlement of Norma's claim that he could have secured a release of any attachment on this corporate account. Even if petitioner's fear was well grounded, under the circumstances involved herein, petitioner would not be entitled to deduct the expenses in dispute under section 212(2), supra. Deductibility of the payments in question turns wholly upon the nature of the activities to which they related and not the reason why the payments were made or the economic consequences which may ensue if such payments were not made. In United States v. Gilmore, supra, the taxpayer contended that attorney fees paid in a divorce proceeding were deductible under the provisions of section 23(a)(2) of the 1939 Code, the predecessor provision of section 212(a), supra, for the reason that if he were found guilty of his wife's charges of martial infidelity, the General Motors Corporation might find it expedient to exercise its right to cancel the dealer franchises of automobile dealerships upon which he was *123 dependent for a living. Rejecting this contention, the Supreme Court held that it is not the "consequences" that might arise from a certain activity that determine the deductibility of an expenditure, but rather it is the underlying origin and character of the resulting claim which determines its deductibility. Earlier, in Lykes v. United States, 343 U.S. 118, the taxpayer contended that legal expenses incurred in contesting the assessment of a gift tax liability were deductible, and that if he had been required to pay the original deficiency he would have been forced to liquidate his stockholdings, which were his main source of income, and that his legal expenses were therefore deductible under section 23(a)(2) of the 1939 Code. The Supreme Court likewise rejected the taxpayer's contention, pointing out that if the impact of a claim on the income-producing resources of a particular taxpayer were to be the touchstone of deductibility of an expense, substantial uncertainty and inequity would inhere in the rule and would not be compatible with the basic lines of expense deductibility *124 delineated by Congress. Such a rule, dependent on consequences that may befall a taxpayer's income-producing property, would lead to capricious results. Our analysis of the facts surrounding this claim and the expenditures incurred by petitioner in resisting it leads us to conclude that said expenses did not have their genesis in the conservation of petitioner's income-producing property, but that the origin of the incident at Norma's apartment was the affair which their married son was having with Norma, a relationship which the petitioners were anxious to terminate. Unquestionably, petitioner's principal reason for visiting Norma's apartment was to put an end to this affair and his $10,000 payment to her was made to shield himself and his family from potential scandal and adverse publicity. It is, in our view, unrealistic to characterize such a situation as anything other than personal or a family matter. The only material connection that Norma had with the business of McCaa Chevrolet Company was the fact that J. C. McCaa, Jr. worked there and it therefore constituted a place of contact between two people carrying on an affair. Of course, the fact that Norma was involved in a *125 few disturbing incidents at the Company's place of business, and that she contacted the place of business on the telephone in an effort to communicate with petitioner's son, does not convert this personal fracas into a business transaction. Manifestly, the locale of the aforesaid incidents, which was part of the chain of events leading to the settlement, does not determine the character of the expenditures in question. Moreover, we do not believe that the telephone calls of Norma to the Company's place of business in order to contact J. C. McCaa, Jr. were injurious to its business. Petitioner acknowledged that the only calls Norma tried to make to the Company's place of business were directed toward his son and that the other employees of the Company were aware that Norma's only objective and purpose at the premises of the Company was petitioner's son. Although the consequences of petitioner's refusal to settle with Norma might have resulted in "devastating publicity," as he avers, we are not convinced that the controlling factor giving rise to the expenditures in question was the conservation of petitioner's income-producing property within the intendment of section 212(2), supra. *126 We believe that the expenses in dispute stemmed from petitioner's intervention in the personal affair of his son and the subsequent altercation in Norma's apartment. Petitioner, on brief, suggests that the expenses in question are also deductible as ordinary and necessary expenses incurred in connection with his business within the purview of section 162(a), supra. Without clarification petitioner avers that the payments in dispute were incurred in connection with his "profit-seeking activities" and are therefore deductible. We find no merit in petitioner's position. It is well established that a stockholder and the corporation are to be viewed as separate entities and that, except in exceptional situations not present herein, the business of a corporation cannot be regarded as the business of its shareholders. Deputy v. Dupont, 308 U.S. 488. Here, it is clear that the expenses under review were incurred and grew out of the personal and family experiences of petitioner rather than any action of petitioner in connection with his conduct of business affairs for himself or *127 as an officer of the Company. Petitioner's primary function in the Company was the handling of its financial affairs. He did not go to Norma's apartment to transact business on his own behalf or for McCaa Chevrolet Company. Norma was neither a customer nor an employee of the Company; and there is no evidence that she had any business relationship with the Company at the time of the incidents underlying her claim. Significantly, the General Release did not include the Company as a party to be released from liability as a result of the "slapping" incident despite the testimony of petitioner that he went to the apartment because he was "trying to keep this business open," and to get Norma to leave his business alone. Although petitioner in several instances testified that he went to Norma's apartment primarily with respect to the business of the Company, the $10,000 payment to Norma was made from the personal funds of petitioner. While the Company had property and a credit rating which would have enabled it to borrow money, no effort was made to have the Company pay the claim. However, the release did include petitioner's son who was not present at the apartment and whose relationship *128 with Norma was the proximate cause of the incident at the apartment which resulted in the claim for which payment was made. It is noteworthy that petitioner testified that had it been P. G. Para, another employee of the Company, who had been having trouble with Norma, petitioner would not have been willing to pay the claim. We are satisfied that it was only because of his son that petitioner allowed himself to become embroiled in the "slapping" incident which led to the expenditures in dispute. Under the circumstances, we do not believe that the expenses in question are deductible under section 162(a), supra. As to the $1,000 fee paid to petitioner's attorney, we find no real distinction between the settlement payment and this fee since both expenditures had their origin in the same personal transaction. When payments are made in settlement of a lawsuit the decisive test of their deductibility, either as nonbusiness expenses or ordinary and necessary business expense, is the character of the transaction which gave rise to the payment. American Envelope Company, 29 T.C. 307, 312. *129 Like the test with respect to the deductibility of expenditures under section 212, supra, the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the legal expenditure was business or personal within the meaning of section 162, supra. Finger v. United States, 257 F. Supp. 312. See also Commissioner v. Tellier, 383 U.S. 687. Where the litigation has its origin in the personal affairs of the taxpayer as here, and not from his business transactions, the costs of litigation are not allowable. In Nadiak v. Commissioner, 356 F. 2d 911 (C.A. 2, 1966), affirming a Memorandum Opinion of this Court, the taxpayer, an airline pilot, sought to deduct legal expense incurred in defending criminal charges filed against him involving assault and battery by a friend of his former wife under section 162(a). The Court of Appeals for *130 the Second Circuit, relying on United States v. Gilmore, held that the legal costs in question were nondeductible personal expenditures, despite the fact that conviction would have resulted in revocation of the taxpayer's commercial pilot's license and loss of his livelihood. The Court stated that the origin of the legal expenses were personal, and that the potential economic consequences to the taxpayer were not determinative. In support of his position that the expenses in question are deductible, petitioner relies on, inter alia, Levitt & Sons, Inc. v. Commissioner, 142 F. 2d 795, reversing a Memorandum Opinion of this Court, and Ditmars v. Commissioner, 302 F. 2d 481, reversing in part a Memorandum Opinion of this Court. We have carefully considered these cases and find them to be distinguishable and not controlling herein. In Levitt & Sons, Inc., supra, the Circuit Court of Appeals held that the corporate taxpayer was entitled to deduct a payment made to settle a threatened lawsuit against one of its officers as ordinary and necessary expense of carrying on its business since the litigation might have impaired the reputation or credit *131 rating of the corporate taxpayer. In Ditmars, supra, the trustee of an estate sued Ditmars, branch manager of a stock brokerage office, to account for excessive commissions which the latter received from the use of certain trust assets in a speculative trading account and from fees obtained as adviser to the trust. The Court of Appeals allowed Ditmars to deduct the expense of resisting said claim to the extent that his settlement payment and attorney costs related to the trading activities and his role as adviser to the trust because the claim arose out of Ditmars' trade or business of stock brokerage. Unlike the cases cited by petitioner, here J. C. McCaa, Sr. was not acting in his capacity as an officer of the corporation, McCaa Chevrolet Company, in making the payments in question. Nor did he incur these expenses in the conservation of his income-producing property or in connection with any trade or business of his own. The expenses in controversy arose from petitioner's effort to resolve a personal or family matter. Personal, living or family expenses are nondeductible *132 under section 262 of the 1954 Code. Furthermore, we hold that the expenditures in question are not deductible as ordinary and necessary expenses under either section 212(2) or 162(a), both supra. Respondent's determination is approved. Decision will be entered under Rule 50. Footnotes
1. Unless otherwise indicated, all references are to the Internal Revenue Code of 1954, as amended.↩
2. Presumably Norma had directed her automobile at the front entrance to the place of business since it was the testimony of McCaa, Sr. that the door was down when he arrived in the morning.↩
3. It was petitioner's testimony that Norma told him of shooting the hole in the paneling of his office. It was also his testimony that he saw the entry at the police station.↩
4. Section 212 of the Internal Revenue Code of 1954 provides, in pertinent part, that: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or * * *↩
5. Although petitioners, on brief, refer to sec. 182 of the 1954 Code, we think they meant sec. 162 thereof. Sec. 162(a), Internal Revenue Code of 1954: (a) IN GENERAL. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *↩