WILLIAM J. Mc DONALD, SR., AND ELIZABETH J. Mc DONALD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Mc DONALD v. COMMISSIONER
Docket No. 5160-76.
United States Tax Court
T.C. Memo 1977-202; 1977 Tax Ct. Memo LEXIS 240; 36 T.C.M. (CCH) 852; June 29, 1977, Filed William J. Mc Donald, Sr., pro se. David R. Smith, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined the following deficiencies in the petitioners' Federal income taxes: Taxable Year
Deficiency
1970
$ 6,813.40
1971
8,380.37
1972
1,229.83
1973
17,516.00 The only issue presented for decision is whether petitioners are entitled to a claimed "preservation of reputation" business deduction in the amount of $121,400 for the taxable year 1973. Our determination with respect to that issue *241 will resolve the controversies arising from the taxable years 1970 through 1972 because each concerns a claimed net operating loss carryback from the year 1973. Petitioners filed an amended return for each prior year claiming a refund due to the net operating loss carryback and, although the Internal Revenue Service originally granted petitioners' applications and paid the refunds, the statutory notice of deficiency subsequently was issued for the amount of each refund on the ground that it had been paid in error. This case was submitted without trial in accordance with the provisions of Rule 122, Tax Court Rules of Practice and Procedure. We adopt the stipulation of facts and attached exhibits as our findings. The pertinent facts are set forth below. William J. Mc Donald, Sr., and Elizabeth J. Mc Donald (petitioners) are husband and wife whose legal address was Geneva, New York, at the time their petition was filed herein. They previously had filed timely joint Federal income tax returns for the taxable years 1970 through 1973 with the Internal Revenue Service Center at Andover, Massachusetts. William J. Mc Donald, Sr. (petitioner) is an attorney who was admitted to the *242 practice of law in the State of New York in 1950. He is now engaged in the practice of law in Geneva, New York. Hazel A. Leckie, an elderly widow unrelated to the Mc Donalds, executed her last will and testament on August 21, 1968. That document, which made reference to either petitioner, Mrs. Mc Donald, or both of them in several provisions, was not drafted by the petitioner. Mrs. Leckie made the following specific bequests in paragraph 3 of her will: C. To my friend, WILLIAM J. McDONALD, an attorney of Geneva, New York, if he shall survive me, my "Booth" painting by John Singer Sargent. D. To my friend, ELIZABETH J. McDONALD, wife of said attorney, all of my jewelry of every kind and description, and all of my furs, if she shall survive me. Paragraphs 4 and 5 of the will directed that an existing trust be terminated and its corpus become a part of the decedent's residuary estate, and that the entire residuary estate pass first to petitioner if he survived the decedent, or second to Mrs. Mc Donald if she survived the decedent and petitioner did not: 4. Under the provisions of a Trust Agreement, dated July 22, 1965, by and between my late husband, ANDREW F. LECKIE, *243 SR., the grantor, and THE HUNTINGTON NATIONAL BANK OF COLUMBUS, OHIO, the Trustee, I was given a power to direct the disposition of certain property. I hereby exercise the said power of appointment granted to me by said instrument, and direct that all property subject thereto shall become and be a part of my residuary estate, and disposed of as hereinafter provided. 5. All of the rest, residue and remainder of the property which I may own at the time of my death, real and personal, and including any property over which I may have any power of appointment, I bequeath and devise to my said friend and attorney, WILLIAM J. McDONALD, of Geneva, New York, if he shall survive me, absolutely and forever.In the event that he shall not survive me, I bequeath and devise all of the said residue of my estate to his wife, ELIZABETH J. McDONALD, if she shall survive me, absolutely and forever. I wish to specifically state herein that my reason for the bequest of my residuary estate as hereinabove provided is that said Willaim J. McDonald and his said wife have been consistently faithful, both in the affairs of Walter Rose and myself, over a period of years, whereas my other relatives and *244 friends have not given me any valued attention whatsoever. Nothing in the record reveals details concerning the content or value of either the trust corpus or of the entire residuary estate. In paragraph 7 the decedent appointed petitioner the executor of her will, and appointed Mrs. Mc Donald to serve in that capacity if petitioner failed to serve for any reason. On November 6, 1970, Hazel Leckie amended her original August 21, 1968, will by executing a codicil which revoked a previous specific bequest of $10,000 to a former employee. Petitioner drafted the codicil for Mrs. Leckie. The effect of that alteration was to place an additional $10,000 in the residuary estate which would pass to petitioner or Mrs. Mc Donald pursuant to paragraph 5 of the will. Mrs. Leckie died on February 28, 1972. When her will was offered for probate, relatives of Mrs. Leckie raised objections to probate alleging that neither the termination of the trust in Paragraph 4 of the will nor the bequest of the residuary estate to petitioner in Paragraph 5 had been made freely or voluntarily. It was alleged that those actions were solely the product of undue influence which petitioner had exerted *245 upon Mrs. Leckie prior to the drafting of her will. Letters of administration were issued thereafter to petitioner, without bond, by the Surrogate Court of Ontario County, New York, since he had been appointed executor of Mrs. Leckie's estate by her will. On November 15, 1972, all objections to Mrs. Leckie's will were withdrawn and both the will and codicil were admitted to probate on that date. The objections were withdrawn because petitioner and the will contestants executed a written compromise agreement dated December 19, 1972, which was filed with the Surrogate Court of Ontario County. It was stated in the written agreement that the compromise was reached in part because "it appears that the litigation of the issues would engender much publicity and would endanger the reputation of William J. Mc Donald as an attorney…." On April 12, 1973, petitioner filed a "Petition for Order Approving Compromise of Controversy" with the Surrogate Court of Ontario County. Subsequently, on April 23, 1973, the Surrogate signed an order approving the proffered compromise agreement. During the remainder of 1973 petitioner paid $121,400 to the heirs and relatives of Mrs. Leckie pursuant *246 to the terms of the compromise agreement. Petitioner made such payments in order to prevent litigation in connection with the will contest proceeding and to avoid any publicity resulting therefrom. Petitioners claimed a miscellaneous itemized deduction of $121,400 for "preservation of reputation" on Schedule A of their joint Federal income tax return for the year 1973. An explanation of the claimed deduction and copies of two canceled checks payable to BONNEY & NICIT, attorneys for the will contestants, totaling $121,400, were attached to the return. On April 12, 1974, petitioner applied to the Internal Revenue Service for refunds for taxes paid for the taxable years 1970, 1971, and 1972 in the respective amounts of $6,813.40, $8,263.36, and $1,229.83. That application was granted on July 29, 1974, and refunds were paid in the amount of $6,813.40 for 1970, $8,380.37 for 1971, and $1,229.83 for 1972, plus interest. Each of the refund claims resulted from petitioner's claiming a net operating loss carryback from the taxable year 1973 for the year involved. The deficiencies determined by respondent for all four years in issue result entirely from his disallowance of petitioner's *247 $121,400 "preservation of reputation" deduction for 1973, and hence the absence of any loss to carryback to the prior years. The issue confronting us is strictly one of fact, yet its resolution is not a simple matter because the parties have provided the Court with minimal information, and the concept of "undue influence," without further illumination, can be used in reference to many diverse forms of conduct. Nonetheless, on this record, we think the petitioner has established that he is entitled to deduct the entire amount pursuant to the provisions of section 162(a), Internal Revenue Code of 1954. [1]
Petitioner's presentation is simple and straight-forward. He is, and was for many years prior to the years in issue, an attorney actively engaged in the practice of law. Hazel A. Leckie, an elderly widow, occasionally called upon petitioner to perform legal services for her. Mrs. Leckie also considered petitioner and Mrs. Mc Donald to be her close friends. Upon her death in 1972, petitioner and Mrs. *248 Mc Donald stood to receive several bequests from Mrs. Leckie through the probate of her will. Petitioner had not drawn the will for Mrs. Leckie. However, several of the decedent's relatives contested the probate of her will on the ground that petitioner had practiced undue influence upon her and thereby wrongfully caused her to bequeath funds to him that otherwise mighthave passed to them. Alarmed over the possible damage that a hotly contested, vengeful lawsuit could cause to his professional reputation as a lawyer, petitioner quickly compromised the suit and paid $121,400 to the various claimants. That amount was later deducted on petitioner's Federal income tax return for 1973, and formed the basis for all three refund claims for prior years. Respondent disallowed petitioner's "preservation of reputation" deduction in its entirety, and issued a statutory notice of deficiency for that year and the three preceding years to which excess net operating losses had been carried back. Citing the Supreme Court's decision in Welch v. Helvering,290 U.S. 111 (1933), respondent characterizes petitioner's expenditures as nondeductible personal expenses within *249 the meaning of section 262 of the Code on the grounds that (1) the payments were not "directly connected" with petitioner's trade or business, (2) nothing in the record indicates that petitioner's fears of damage to his professional reputation were justified, and (3) petitioner made the payments primarily to preserve some portion of his inheritance from Mrs. Leckie rather than to protect his business. Section 162(a) provides, in pertinent part, that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." These is no question that the active practice of law constitutes a "trade or business" within the meaning of section 162. See, e.g., Pepper v. Commissioner,36 T.C. 886 (1961); Snow v. Commissioner,31 T.C. 585 (1958).There is likewise no question that petitioner was engaged in the active practice of law, and that an attorney-client relationship existed between petitioner and Mrs. Leckie at all times prior to her death. While it may be true that petitioner and Mrs. Leckie, and indeed Mrs. Mc Donald and Mrs. Leckie, were also close friends, *250 this fact in no way diminishes the obvious simultaneous professional relationship that existed between them. Respondent argues to the contrary and seeks support for his claim from the fact that petitioner did not draft Mrs. Leckie's will. We do not find that argument persuasive because petitioner, as a beneficiary under the will, might have violated his profession's code of ethics by the act of drafting Mrs. Leckie's will. The record indicates that petitioner had known Mrs. Leckie for years, that she selected him to act as the executor of her will, that at a later date she selected him to draft the codicil to her will, and that he is described by her in paragraph 5 of her will as "my said friend and attorney." In addition, we note that not only was petitioner consistently described in the will as an attorney, he also was the only individual identified by trade or profession. It is clear that claims of "undue influence" arising out of a professional relationship of a confidential nature could undermine the public's confidence or trust in an attorney. This seems true even where the claimants are presumably irate individuals who, until the recent reading of a will, expected to take *251 large sums of money upon the termination of a trust to which they were contingent remaindermen. Further exacerbating this situation is the fact that the one individual who could answer such allegations, Mrs. Leckie, died prior to the prosecution of such claims. Petitioner has resolutely asserted from the moment of settlement of those claims that he settled them solely to nip any litigation in the bud and thereby reduce any possible adverse publicity to a minimum. In our judgment the alleged breach of trust underlying the will contest suit was directly connected with petitioner's practice of law, whether or not it ever actually occurred. Moreover, we think the petitioner's primary purpose for settling those claims was to protect his business reputation and his future earnings flow. His personal considerations were incidental to his desire to protect his business. This is true even though the form of the legal action was a will contest suit rather than an action brought directly against petitioner, because either could bring about the results petitioner feared. Respondent contends that petitioner compromised the suit and insured probate of Mrs. Leckie's will primarily to preserve *252 some portion of his inheritance. The record does not support that argument. As stated above, situations of this nature often will not produce large quantities of independent corroborative evidence of primary intentions. The only evidence before us supports petitioner's assertion that he acted to protect his business reputation and future earnings. Respondent's case dwells entirely upon suspicions and unsupported allegations. Therefore, we find that petitioner has carried his burden of proof. Two cases decided by the United States Court of Appeals for the Second Circuit bolster petitioner's claim despite several factual differences. In Levitt & Sons v. Nunan,142 F. 2d 795 (2d Cir. 1944), the taxpayer paid another corporation $65,000 to secure a release from its claim involving a purported breach of trust by a former officer of that corporation. That person currently served as an officer of the taxpayer. The taxpayer-corporation was involved in many complex business dealings at the time the claim was made and, fearful that public knowledge of the claim would damage its business, paid the alleged damages despite its belief that the claim was utterly baseless *253 and deducted that payment on its tax return as an expense item. The Court of Appeals stated with respect to the deduction: That such payments to protect a business generally are "ordinary" expenses is abundantly settled by authority and can no longer be questioned…. An expense to avoid such results may be "necessary," although the anticipated loss is not inevitable; business, like everything else, can only be conducted upon prophecies, and prophecies are never infallible. [citations omitted.] 142 F. 2d at 799. In an earlier case before that same Court, Helvering v. Community Bond & Mortgage Corp.,74 F. 2d 727 (2d Cir. 1935), a corporate taxpayer was permitted to deduct as a business expense the costs associated with preserving its business reputation and future earnings because its "primary motive" was found to be the preservation of that reputation. In our opinion the petitioner's actions fall within the spirit, if not the factual pattern, of these cases. Decision will be entered for the petitioners. Footnotes
1. Except as otherwise indicated, all statutory references herein pertain to the Internal Revenue Code of 1954, as amended during the years in issue.↩